UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:22-cv-62176-ALTMAN/Hunt

JANE DOE,

     Plaintiff,

v.

FENIX INTERNATIONAL LIMITED,
MICHELSON ROMELUS, and
BENDJY CHARLES,

     Defendants.

_____/

**FENIX INTERNATIONAL LIMITED'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A
CLAIM AND MOTION TO SEVER AND REMAND STATE-LAW CLAIMS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..........................................................................................................................1

FACTUAL ALLEGATIONS.........................................................................................................2

LEGAL STANDARD ....................................................................................................................3

ARGUMENT .................................................................................................................................4

I.      Plaintiff Does Not State a Claim for Violation of the TVPRA.........................................4

        A.      Fenix Is Immune from Suit Under Section 230(c)(1). ...........................................4

                1.      Section 230(c)(1) Applies.........................................................................4

                2.      Section 230(e)(5)(A)'s Exception To Immunity Does Not Apply.............8

        B.      Plaintiff Fails To Plausibly Allege Participation In A Venture............................11

II.     The Court Lacks Personal Jurisdiction Over Fenix.........................................................12

III.    Plaintiff's State-Law Claims Should Be Severed and Remanded....................................15

        A.      The Court Cannot Exercise Supplemental Jurisdiction Over the State-Law
                Claims Because They Do Not Derive from a "Common Nucleus of
                Operative Fact."....................................................................................................15

        B.      The Court Should Decline to Exercise Discretion to Assert Supplemental
                Jurisdiction Over the State-Law Claims. ..............................................................17

CONCLUSION............................................................................................................................18

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*8100 R.R. Ave. Realty Tr. v. R.W. Tansill Const. Co.*,
  638 So. 2d 149 (Fla. 4th DCA 1994) .................................................................13

*Almeida v. Amazon.com, Inc.*,
  456 F.3d 1316 (11th Cir. 2006)..........................................................................4

*Am. Fire & Cas. Co. v. Finn*,
  341 U.S. 6 (1951) ...............................................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................3

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) .............................................................................5

*Couture v. Noshirvan*,
  No. 23-cv-340, 2023 WL 8280955 (M.D. Fla. Nov. 30, 2023).............................7

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ...........................................................................................15

*Doe #1 v. MG Freesites, LTD*,
  676 F. Supp. 3d 1136 (N.D. Ala. 2022) ...............................................................7

*Doe #1 v. Red Roof Inns, Inc.*,
  21 F.4th 714 (11th Cir. 2021) ................................................................. 9, 11, 12

*Doe v. Kik Interactive, Inc.*,
  482 F. Supp. 3d 1242 (S.D. Fla. 2020)..................................................................9

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ...............................................................................5

*Does 1-6 v. Reddit, Inc.*,
  51 F.4th 1137 (9th Cir. 2022) .........................................................................9, 10

*Dowbenko v. Google Inc.*,
  582 F. App'x 801 (11th Cir. 2014) .......................................................................8

*Draughon v. City of Oldsmar*,
767 F. Supp. 1144 (M.D. Fla. 1991) ................................................................18

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ...................................................................6, 7

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019) ...........................................................................4

*FR Tax Grp., LLC v. Kassover*,
No. 17-cv-80386, 2017 WL 6346051 (S.D. Fla. Aug. 2, 2017), *aff'd*, 723 F.
App'x 977 (11th Cir. 2018) ...........................................................................12

*Fraser v. Smith*,
594 F.3d 842 (11th Cir. 2010) ......................................................................14

*Furnari v. Shapewriter, Inc.*,
10-cv-1463, 2011 WL 253962 (M.D. Fla. Jan. 25, 2011) ....................................13

*G.W. v. Northbrook Indus., Inc.*,
No. 20-cv-05232, 2024 WL 3166083 (N.D. Ga. June 14, 2024).............................12

*Glover v. Liggett Grp.*,
459 F.3d 1304 (11th Cir. 2006).......................................................................3

*Herrick v. Grindr, LLC*,
306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019).......................5

*HSC Organics LLC v. Bymaster*,
No. 21-cv-1852, 2022 WL 2275171 (M.D. Fla. June 23, 2022) ............................14

*K.H. v. Riti, Inc.*,
No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024).....................................12

*L.H. v. Marriott Int'l, Inc.*,
604 F. Supp. 3d 1346 (S.D. Fla. 2022)...........................................5, 6, 7, 8 , 9, 13

*Lapidus v. NCL Am. LLC*,
12-cv-21183, 2013 WL 646185 (S.D. Fla. Feb. 14, 2013)....................................15

*Latell v. Triano*,
No. 2:13-cv-565, 2014 WL 6240001 (M.D. Fla. Nov. 13, 2014)............................13

*Longino v. Martinez*,
No. 22-cv-22010, 2022 WL 3279539 (S.D. Fla. Aug. 11, 2022) ...........................17

*Lucero v. Trosch*,
121 F.3d 591 (11th Cir. 1997) .......................................................................17

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990) ........................................................................................ 14

*McCall v. Zotos*,
    No. 22-11725, 2023 WL 3946827 (11th Cir. June 12, 2023) ............................................. 14

*Meier v. Sun Int'l Hotels, Ltd.*,
    288 F.3d 1264 (11th Cir. 2002) ........................................................................................ 13

*Mercado v. Cong. Auto Parts Co.*,
    No. 18-cv-80325, 2018 WL 3353059 (S.D. Fla. June 13, 2018) ....................................... 16

*Mezey v. Twitter, Inc.*,
    No. 18-cv-21069, 2018 WL 5306769 (S.D. Fla. July 19, 2018) ........................................... 5

*Moody v. NetChoice, LLC*,
    144 S. Ct. 2383 (2024) ....................................................................................................... 8

*Muto v. Fenix Int'l Ltd.*,
    No. 22-cv-02164, 2024 WL 2148734 (C.D. Cal. May 2, 2024) .......................................... 14

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Ltd.*,
    591 F.3d 250 (4th Cir. 2009) ............................................................................................. 5

*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015) ........................................................................................................... 10

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
    558 F.3d 1210 (11th Cir. 2009) .................................................................................. 12, 14

*Peruyero v. Airbus S.A.S.*,
    83 F. Supp. 3d 1283 (S.D. Fla. 2014) ................................................................................ 4

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
    551 U.S. 224 (2007) ................................................................................................... 10, 11

*PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*,
    598 F.3d 802 (11th Cir. 2010) ..................................................................................... 3, 13

*Rowe v. City of Fort Lauderdale*,
    279 F.3d 1271 (11th Cir. 2002) ........................................................................................ 17

*Schwab v. Hites*,
    896 F. Supp. 2d 1124 (M.D. Fla. 2012) ............................................................................. 3

*Shaw v. Strange*,
    No. 22-cv-51, 2022 WL 971892 (M.D. Fla. Mar. 31, 2022) ............................................. 18

*Shrader v. Biddinger,*
    633 F.3d 1235 (10th Cir. 2011)................................................................14

*Shular v. United States,*
    140 S. Ct. 779 (2020) ...............................................................................10

*Software Brokers of Am., Inc. v. Doticom Corp.,*
    484 F. Supp. 3d 1205 (S.D. Fla. 2020)....................................................16

*Trabajadores v. Cortez Moreno,*
    237 So. 3d 1127 (Fla. 3d DCA 2018)......................................................14

*United States v. Wearing,*
    865 F.3d 553 (7th Cir. 2017) ...................................................................11

*Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta,*
    701 F.3d 669 (11th Cir. 2012) ............................................................15, 16

*Woodhull Freedom Found. v. United States,*
    72 F.4th 1286 (D.C. Cir. 2023)..................................................................9

*Zeran v. Am. Online, Inc.,*
    129 F.3d 327 (4th Cir. 1997) .....................................................................4

*Zurvita, Inc. v. Wei Xu,*
    No. 18-cv-02480, 2019 WL 423347 (M.D. Fla. Feb. 4, 2019)...............13

## Statutes

18 U.S.C. § 1591.......................................................................................2, 9, 11

18 U.S.C. § 1595(a) .....................................................................................2, 4, 9

28 U.S.C. § 1331.............................................................................................15

28 U.S.C. § 1332.............................................................................................15

28 U.S.C. § 1367...............................................................................1, 4, 15, 17

28 U.S.C. § 1441.................................................................................1, 4, 15

28 U.S.C. § 1446.............................................................................................15

47 U.S.C. § 230.............................................................................1, 4, 5, 6, 8, 9, 10

Fla. Stat. § 48.193 .............................................................................................13

Allow States and Victims to Fight Online Sex Trafficking Act of 2017
   ("FOSTA")...................................................................................... 3, 9, 10

Trafficking Victims Protection Reauthorization Act ("TVPRA") ..................................... *passim*

## Other Authorities

U.S. CONST. AMEND. 1 ...................................................................................... 8, 18

Black's Law Dictionary (11th ed. 2019) ...................................................................10

Fed. R. Civ. P. 8(a)(2) ..........................................................................................3

Fed. R. Civ. P. 12..............................................................................................1, 3

U.S. CONST. ART. III ............................................................................................4

Merriam-Webster's Collegiate Dictionary 1288 (10th ed. 1999)..................................10

Fenix International Limited ("Fenix") moves to (1) dismiss the Second Amended Complaint ("SAC") for lack of personal jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and (2) sever and remand the claims against Michelson Romelus and Bendjy Charles (together, the "Tort Defendants") pursuant to 28 U.S.C. § 1441(c) and/or 28 U.S.C. § 1367(c).

## INTRODUCTION

Plaintiff's third attempt to plead a Trafficking Victims Protection Reauthorization Act ("TVPRA") claim against Fenix fails in its entirety and demonstrates that further amendment would be futile.

As confirmed by Plaintiff's allegations, Fenix is an interactive computer service that is immune from liability under Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1). Recognizing her inability to meet the actual knowledge standard required to establish the 47 U.S.C. § 230(e)(5)(A) exception to Section 230 immunity, Plaintiff continues to urge this Court to adopt a constructive knowledge standard. But, on this pure issue of law, Plaintiff's proffered statutory interpretation ignores the plain language of the TVPRA, and has been rejected by every federal court to address it, including by the Ninth Circuit in the recent *Reddit* decision (described below) and by U.S. District Judges Scola and Singhal in recent TVPRA cases before them. Given this legal landscape, Plaintiff attempts to plead around Fenix's statutory immunity by relabeling Fenix an "information content provider." But there are no factual allegations showing that Fenix contributed to the *illegality* of the content uploaded by the Tort Defendants, which is a prerequisite to establishing that Fenix is an "information content provider" that lacks Section 230 immunity. Even if Fenix were not entitled to immunity, Plaintiff's TVPRA claim still fails because Plaintiff has not—and cannot—plausibly allege that Fenix participated in a sex-trafficking venture within the meaning of the TVPRA.

Plaintiff's failure to state a viable substantive TVPRA claim against Fenix also dooms its attempt to assert long arm jurisdiction over Fenix in these circumstances. As the Eleventh Circuit has instructed, before addressing the question of whether specific personal jurisdiction exists, the Court must determine whether the allegations of the complaint state a cause of action upon which to base the assertion of long arm jurisdiction. Here, because Count I fails to state a claim, there is no basis for exercising jurisdiction over Fenix. Further, the SAC fails to allege little more in support of jurisdiction than the fact that Fenix—a company Plaintiff finally admits is based in the

United Kingdom—owns and operates a successful, globally accessible website that happens to have users in Florida.

Finally, the Court should also sever and remand Plaintiff's state-law battery claims against the Tort Defendants because those claims arise from a separate nucleus of operative fact.

## FACTUAL ALLEGATIONS

Plaintiff alleges that the Tort Defendants committed a violent, non-consensual sex act against her on or about April 29, 2022. (SAC ¶¶ 5, 12–15.) At some unspecified point after May 2, 2022, one of the Tort Defendants allegedly uploaded a video recording of that act to OnlyFans, which is owned by Fenix. (*Id.* ¶ 18.) Plaintiff does ***not*** allege that (1) Fenix participated in any way in the creation of the video; (2) the recorded sex act constituted trafficking at the time it was uploaded to OnlyFans;[1] or (3) Fenix had actual knowledge that the video depicted an alleged non-consensual sex act when one of the Tort Defendants posted it to Fenix's website. (*See generally* SAC.) Rather, Plaintiff bases her TVPRA claim on the conclusory allegation that Fenix "had *constructive knowledge* that its website OnlyFans affords individuals the opportunity to post and profit from illegal pornographic and trafficked content." (*Id.* ¶ 31 (emphasis added).)[2]

The SAC also includes an unfounded allegation that Fenix "participated in" the alleged venture "by knowingly facilitating an environment for illegal content publishing." (*Id.* ¶ 30.) Plaintiff further alleges, without support, that Fenix "violated 18 U.S.C. § 1595(a) by knowingly benefitting from profit-sharing in a commercial venture by anonymizing web traffic and utilizing a paywall to make it easier for individuals to sell illegal pornographic material." (*Id.* ¶ 29.) Plaintiff also alleges that Fenix is an "information content provider" because it allegedly verified Defendant Romelus's account in accordance with its identity-verification policies (*id.* ¶¶ 31–32); required creators to provide hyperlinks to their other social media accounts (*id.* ¶ 33); allegedly advertised some creators' profiles and videos (*id.* ¶ 35); and supposedly encouraged "the creation of [illegal] content by not putting forth any safeguards" (*id.* ¶ 36). Based on these allegations, Plaintiff asserts

---

[1]  Plaintiff concedes that "commercial sex act" requires that something "of value [be] given to or received by any person" on account of that act. (SAC ¶ 27) (quoting 18 U.S.C. § 1591(3).) But Plaintiff alleges that something of value was exchanged only *after* the video was uploaded to OnlyFans.

[2]  Any such action is explicitly prohibited by OnlyFans's Terms of Service.

one count against Fenix for violation of the TVPRA.[3] (*Id.* at 5-8.)

Knowing that Section 230 of the CDA immunizes interactive computer service providers like Fenix, Plaintiff alleges that Section 230 does not apply because the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA") "removed immunity for civil claims under Section 230 … for websites that knowingly assist … activities that violate federal sex trafficking law." (*Id.* ¶ 26.) Plaintiff ignores the plain language of the statute and substantial authority to incorrectly assert that, under the FOSTA exception, the "website need not have actual knowledge of the sex trafficking at issue" if "the provider has constructive knowledge of the trafficking." (*Id.*)

As to jurisdiction, Plaintiff does not dispute that Fenix is a company established and operated in the United Kingdom, but asserts that Fenix's ownership and operation of a globally-accessible website subjects it to jurisdiction in Florida.

## LEGAL STANDARD

While Fenix seeks dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of jurisdiction, before a court can "address[] the question of whether specific jurisdiction exists under the long arm statute, [it] must determine whether the allegations of the complaint state a cause of action." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (internal quotation omitted); *Schwab v. Hites*, 896 F. Supp. 2d 1124, 1131 (M.D. Fla. 2012). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1363–64 (S.D. Fla. 2022) (Scola, J.) (quoting *Glover v. Liggett Grp.*, 459 F.3d 1304, 1308 (11th Cir. 2006). To state a claim under Rule 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim requires "more than labels and conclusions" and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). In the jurisdictional context, to withstand a motion to dismiss, a plaintiff "must plead sufficient facts to establish a prima facie case of jurisdiction

---

[3] The SAC fails to address not only that submission of the illegal video violated OnlyFans's Terms of Service, but also that Fenix immediately removed the video once it independently learned of the alleged illegality of the video.

over the non-resident defendant." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014).

Fenix also moves to sever and remand under Section 1441(c), which provides that if a federal court concludes it cannot exercise supplemental jurisdiction over the state claims that were removed with a federal claim, then it must sever the state claims and "remand the severed claims to the State Court from which the action was removed." 28 U.S.C. § 1441(c)(2). District courts may only exercise supplemental jurisdiction over state claims arising out of a common nucleus of operative fact relating to the claim within the court's original jurisdiction, such that they form part of the same "case or controversy" under Article III of the U.S. Constitution. 28 U.S.C. § 1367(a).

## ARGUMENT

**I.    PLAINTIFF DOES NOT STATE A CLAIM FOR VIOLATION OF THE TVPRA.**

The only claim against Fenix—Count I—should be dismissed for two reasons. *First*, Section 230(c) immunizes interactive computer service providers (like Fenix) from claims (like Count I) that seek to hold them liable for content published on their platforms by a third party (like the Tort Defendants' video). *Second*, Count I fails to plausibly allege "participation in a venture" within the meaning of the TVPRA. 18 U.S.C. § 1595(a).

*A.    Fenix Is Immune from Suit Under Section 230(c)(1).*

1.    Section 230(c)(1) Applies.

At the dawn of the dot-com era, "Congress made a policy choice … not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages," *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330–31 (4th Cir. 1997), and "to maintain the robust nature of Internet communication," *Force v. Facebook, Inc.*, 934 F.3d 53, 63 (2d Cir. 2019) (quotation and citation omitted). It therefore enacted Section 230(c)(1), which states that "[n]o provider … of an interactive computer service shall be treated as a publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). In the nearly thirty years since its enactment, federal courts consistently have held that Section 230 "establish[es] broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (citation omitted). Claims of such immunity should be "resolve[d] … at the earliest possible stage"—especially, on motions to dismiss—"because that immunity protects websites not only

4

from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Ltd.*, 591 F.3d 250, 255 (4th Cir. 2009) (citation omitted).

Determining whether Section 230(c)(1) immunity applies involves three elements, each of which is established on the face of the SAC. To be entitled to Section 230(c)(1)'s protection, a defendant must show, *first*, that it is a provider of an interactive computer service; *second*, that the plaintiff's claim is based on information provided by another information content provider; and *third*, that the claim would treat the defendant as the publisher or speaker of that information. *See Marriott Int'l, Inc.*, 604 F. Supp. 3d at 1363–64.

As to the first element, the SAC admits that Fenix owns and operates OnlyFans, a website that allows users to purchase content uploaded by individual creators. (SAC ¶ 9.) Fenix is therefore an "interactive computer service" within the meaning of Section 230. 47 U.S.C. § 230(f)(2). As to the second element, Count I is "based on information provided by another information content provider"—specifically, the video allegedly recorded and uploaded by one of the Tort Defendants. *Marriott Int'l*, 604 F. Supp. 3d at 1363; (*see* SAC ¶¶ 28, 30.). As to the third element, Count I treats Fenix "as the publisher or speaker" of that third-party content by seeking to hold it liable for the content's upload and distribution. 47 U.S.C. § 230(c)(1); (*see* SAC ¶¶ 18, 20, 28, 30, 36.) Section 230 immunity therefore squarely applies. *See, e.g.*, *Doe v. MySpace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008) ("Parties complaining that they were harmed by a Web site's publication of user-generated content have recourse; they may sue the third-party user who generated the content, but not the interactive computer service that enabled them to publish the content online.")

Setting aside its lack of merit, the SAC's focus on Fenix's alleged "failure to enact safeguards," as well as policies that allegedly "make it easier" to upload illegal content, (SAC ¶¶ 20, 29), is insufficient to "plead around" Section 230 immunity under well-settled law. Courts routinely dismiss claims—like Count I—"premised on an [interactive computer service provider's] failure to block, screen, or otherwise prevent the dissemination of a third party's content[]" as barred by Section 230(c)(1), because such claims inherently "seek to hold the defendant liable in its capacity as a 'publisher.'" *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 592 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019) (citation and internal quotations omitted); *see also, e.g.*, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) ("[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process."); *Mezey v. Twitter,*

*Inc.*, No. 18-cv-21069, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (finding that Section 230 barred a plaintiff's claims, which sought to hold the defendant "liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content").

Plaintiff attempts to avoid this straightforward analysis by shifting focus onto what she alleges are Fenix's generally applicable policies, including Fenix's identity verification policies and alleged advertising of creators' content. (SAC ¶¶ 32, 35, 36.) Plaintiff pursues a misguided theory that these alleged practices somehow transform OnlyFans from an interactive computer service, entitled to Section 230(c)'s full protection, to an "information content provider" without such protection. 47 U.S.C. § 230(f)(3).

"To begin with, a website does not 'create' or 'develop' content simply by providing tools that make user-created content available and usable to others." *Marriott*, 604 F. Supp.3d at 1364. The term "development" in Section 230(f)(3)'s definition of an "information content provider" refers "not merely to augmenting the content generally, but to contributing to its alleged unlawfulness." *Id.* (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008)). A website materially contributes to the alleged unlawfulness of content if "it pointedly solicited such content, essentially compelling users to engage in illegal conduct as a condition to using the platform" or "directly participated in developing the alleged illegality." *Id.* (alteration adopted) (quoting *Roommates.Com*, 521 F.3d at 1174). A "lack of diligence in preventing trafficking" is not enough. *Id.* at 1365.

Plaintiff's allegations fall well short of these accepted standards. Plaintiff erroneously suggests that allegedly placing a check mark next to the name of verified creators,[4] allowing creators to include hyperlinks to their other social media accounts, and allegedly anonymizing web traffic and providing a paywall somehow supports her TVPRA claim. (SAC ¶¶ 29, 30, 31-33, 36.) But "a website's supply of" such "'neutral tools' … is not a material contribution because it does 'nothing to enhance' the unlawfulness of the message." *Marriott*, 604 F. Supp. 3d at 1364 (quoting

---

[4] The allegation that OnlyFans utilizes "check marks" is false. Unlike another popular social media website, OnlyFans does not utilize check marks to designate "verified" creators. Instead, all creators must undergo age and identity verification prior to opening their OnlyFans account. Similarly, contrary to the allegations in the SAC, OnlyFans has substantial safeguards in place to prevent NCII and other improper content (SAC ¶¶ 20-21) and does not edit, modify or create thumbnails for creators' content (SAC ¶ 35).

*Roommates.Com*, 521 F.3d at 1170, 1172). None of those alleged features can be said to have "*required* or *induced* … users to post unlawful content."[5] *Id.* at 1365. Instead, Plaintiff contends that Fenix "encourag[ed] the creation of [unlawful] content by not putting forth any safeguards to prevent this content from being sold on their [sic] website." (SAC ¶ 36.) But as Judge Scola explained in *Marriott*, a "lack of diligence in preventing trafficking" is not enough to show that a website "created or developed the trafficking content"; allegations that a website did not engage in prophylactic measures to prevent harm to a user "conflate, on the one hand, [the] creation of a platform that her traffickers *used* to traffic her, with, on the other, [the website's] having actually materially contributed, itself, to the creation and development of the illegal postings at issue." 604 F. Supp. 3d at 1365.

For similar reasons, Plaintiff's allegation that Fenix financially benefited from the sale of the video does not move the needle, even accepting that allegation as true.[6] Allegations that a platform "makes money from [a creator's] videos" do not establish that the platform "contributed materially to the alleged illegality of the videos." *Couture v. Noshirvan*, No. 23-cv-340, 2023 WL 8280955, at *3 (M.D. Fla. Nov. 30, 2023) (alteration adopted) (quoting *Roommates.Com*, 521 F.3d at 1168). Subscription fees that apply generally to the lawful content on OnlyFans cannot reasonably be viewed as encouraging users to post unlawful content.

Plaintiff further errs in alleging that features affecting the presentation of OnlyFans content support her TVPRA claim. Specifically, Plaintiff alleges that Fenix "advertised the profiles" of creators by linking viewers to creators' profiles and by "add[ing] new captions, new video and

---

[5]  Plaintiff's allegations starkly contrast with the pertinent allegations in *Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136 (N.D. Ala. 2022), the case on which she principally relies (ECF 60 at 3). The complaint in *MG Freesites* alleged that the defendant specifically solicited and calibrated its features to encourage the posting of child pornography. It did so by, among other things, creating tags and keywords like "teen," "abused teen," and "middle school girls" to facilitate searches for child pornography; employing "coded language" for child pornography "to ensure that such content is visible to users who search for it;" and providing "extensive instructions to uploaders including the type of content viewers wish to see and the sex acts to take place." 676 F. Supp. 3d at 1162. Those allegations of direct solicitation of illegal content are a far cry from Plaintiff's allegations here.

[6]  Plaintiff's conclusory allegation that Fenix financially benefited from the video is both insufficient to state a claim against Fenix under the TVPRA, and incorrect. Fenix rescinded all financial transactions relating to Defendant Romelus' account, including, but not limited to, those involving the video in question, when it promptly removed the offending content from its website—meaning that it received *no* financial benefit.

content summaries, new animations," and "new thumbnails" to posts.[7] (SAC ¶ 35.) But these allegations do nothing to explain how such features contribute to the illegality of content, and ultimately "fail[] to tie any of [Fenix's] conduct to the creation of the illegal post[]" itself. *Marriott*, 604 F. Supp. 3d at 1365; *see also Dowbenko v. Google Inc.*, 582 F. App'x 801, 805 (11th Cir. 2014) (an allegation that "Google manipulated its search results to prominently feature the article at issue" did not deprive Google of Section 230(c) immunity). "Instead, the factual allegations merely describe a system that *allowed* the illegal post[]" in the first instance, without "showing that these aspects of [the] platform actually encourage illegal conduct any more than they, just as easily, allow for legal conduct."[8] *Marriott,* 604 F. Supp. 3d at 1365.

The allegations in the SAC establish that Fenix is an interactive computer service, not an information content provider, under Section 230, and as such, it is entitled to the full protection of Section 230(c).

2.      Section 230(e)(5)(A)'s Exception To Immunity Does Not Apply.

Having filed a SAC that concedes the prima facia applicability of Section 230(c)(1)'s protective shield, Plaintiff fails in her effort to shoehorn Count I within FOSTA's narrow exception to immunity.

Section 230(e)(5)(A) states that "[n]othing in this section … shall be construed to impair or limit … any claim in a civil action brought under section 1595 of title 18, *if the conduct underlying the claim constitutes a violation of section 1591 of that title.*" 47 U.S.C. § 230(e)(5)(A) (emphasis added). Section 1591 of Title 18 is a criminal statute. It imposes criminal penalties on:

Whoever ***knowingly*** –

(1) in or affecting interstate or foreign commerce … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a

---

[7] Although there is nothing in the SAC to show that these alleged actions contributed in any way to the illegality of content, the allegations are false. Fenix does not edit or modify creators' content.

[8]   Plaintiff's attempt to fault Fenix for its alleged decisions concerning the presentation and prioritization (or deprioritization) of content faces another obstacle: the First Amendment. The Supreme Court recently reiterated that such editorial decisions trigger at least some level of First Amendment scrutiny. *See Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2399–400 (2024) ("[E]xpressive activity includes presenting a curated compilation of speech originally created by others.").

venture which has engaged in an act described in violation of paragraph (1),

> *knowing*, … , that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act[.]

18 U.S.C. § 1591(a) (emphases added). Section 1591 elsewhere defines "[t]he term 'participation in a venture'" as "*knowingly* assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4) (emphasis added). In other words, proving that an interactive computer service violated Section 1591(a) requires proving actual knowledge of the criminal conduct that the statute prohibits.

Plaintiff never alleges that Fenix *actually knew* that the Tort Defendants would attack her or *knew* that they would upload a video of the attack. To the contrary, she alleges that Fenix "need not have actual knowledge of the sex trafficking at issue, as long as the provider has constructive knowledge of the trafficking." (SAC ¶¶ 26.) This assertion is contrary to the law. The relevant FOSTA exception requires Plaintiff to allege that "the conduct underlying [her TVPRA] claim constitutes a violation of section 1591." 47 U.S.C. § 230(e)(5)(A). "Presumably because it imposes criminal liability, Section 1591(a) includes a scienter requirement that does not appear in Section 1595(a)—a defendant must *know* 'that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act.'" *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021).

Federal courts have universally held that "actual knowledge is required" for the Section 230(e)(5)(A) exception to apply. *Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1304 n.6 (D.C. Cir. 2023) ("[A]ll courts to have decided the issue thus far are now in alignment."); *Does 1-6 v. Reddit, Inc.,* 51 F.4th 1137, 1145 (9th Cir. 2022) ("[I]t is clear that FOSTA requires that a defendant-website violate the criminal statute by directly sex trafficking or, with actual knowledge, 'assisting, supporting, or facilitating' trafficking, for the immunity exception to apply."); *Marriott Int'l, Inc.*, 604 F. Supp. 3d at 1365 (dismissing TVPRA claim where plaintiff "conflate[d], on the one hand, craigslist's creation of a platform that her traffickers *used* to traffic her, with, on the other, craigslist's having actually materially contributed, itself, to the creation and development of the illegal postings at issue" because "nothing about the platform that craigslist provided … led users to necessarily engage in the illegal trafficking conduct alleged here"); *Doe v. Kik Interactive, Inc.,* 482 F. Supp. 3d 1242, 1251 (S.D. Fla. 2020) (Singhal, J.) ("By its terms, FOSTA did not abrogate CDA immunity for all claims arising from sex trafficking; FOSTA permits civil liability

for websites only 'if the conduct underlying the claim constitutes a violation of section 1591.' And section 1591 requires knowing and active participation in sex trafficking by the defendants." (citation omitted)).

This consensus aligns with Section 230(e)(5)(A)'s plain text, which provides an exception to immunity only "if the conduct underlying the claim constitutes a violation of section 1591." Three features of the statutory text confirm the point.

***First***, Congress's use and placement of the definite article "*the*" twice in the provision makes clear that the phrase "the claim" refers to "a civil action brought under section 1595," *Reddit*, 51 F.4th at 1142 n.1; and "the conduct" that must violate Section 1591 is the same conduct underlying the civil Section 1595 claim.

***Second***, the meaning of "underlying" and "claim" demonstrates that the party whose conduct Congress was concerned about was the interactive computer service provider's. "Underlying" means "to be at the basis" or "form the foundation of," *Underlying*, Merriam-Webster's Collegiate Dictionary 1288 (10th ed. 1999), and a "claim" is "[t]he assertion of an existing right," *Claim*, Black's Law Dictionary (11th ed. 2019). The only conceivable "basis" or "foundation" of a civil claim against a website defendant is *the website's* conduct—not that of third parties. *See Reddit*, 51 F.4th at 1142; *see also OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 29, 33 (2015) (eliminating sovereign immunity in any action "based upon" certain conduct requires "looking to the 'basis' or 'foundation' for a claim, those elements that, if proven, would entitle a plaintiff to relief" (cleaned up)).

***Third***, Section 230(e)(5)(A)'s "neighboring provision[s]" confirm the statute's plain meaning. *Shular v. United States*, 140 S. Ct. 779, 785 (2020). In FOSTA, Congress enacted three adjacent exceptions to Section 230 immunity. The first is Section 230(e)(5)(A), discussed above. The second and third, contained in Section 230(e)(5)(B)-(C), exempt "any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation" of either (i) Section 1591 or (ii) of a federal statute prohibiting the promotion or facilitation of prostitution. 47 U.S.C. § 230(e)(5)(B)–(C). There is no way to read these latter two provisions except as requiring proof that *the defendant* in a state criminal proceeding—not a third party—violated a federal criminal statute. And "identical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007). "That maxim is doubly appropriate" where, as here, the relevant words

10

and phrases were inserted "at the same time." *Id.*  In short, Plaintiff's contention that constructive knowledge is enough contravenes both the plain statutory text and the universal consensus of federal courts.

It is apparent why Plaintiff cannot—and has not even attempted to—plausibly allege a *knowing* violation of Section 1591. The statute requires proving that the defendant actually knew that "force, threats of force, fraud, or coercion …, or any combination of such means *will be used* to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(2) (emphasis added). Congress's use of the future tense means that the defendant must have actually known *in advance* that participants in the venture would coerce a commercial sex act by unlawful means. Plaintiff cannot credibly allege that Fenix actually knew in advance of the Tort Defendants' alleged plan to assault her, and she has now had three opportunities to do so.[9] Count I should accordingly be dismissed with prejudice.

> B.   *Plaintiff Fails To Plausibly Allege Participation In A Venture.*

Count I fails for an additional, independent reason: Plaintiff has not credibly alleged that Fenix participated in a sex trafficking venture. To establish that essential element, Plaintiff must allege that Fenix "took part in the common undertaking of sex trafficking" with the Tort Defendants. *Red Roof Inns*, 21 F.4th at 726. Plaintiff has not done so.

Plaintiff alleges instead that Fenix participated in a venture in violation of the TVPRA by "facilitating an environment for illegal content publishing" and requiring creators like Defendant Romelus to pay it 20 percent of subscription fees and purchases associated with his account. (SAC ¶ 30.) These allegations do not establish either a "common undertaking" between Fenix and the Tort Defendants or Fenix's active participation in the alleged venture.

The Eleventh Circuit's decision in *Red Roof Inns* illustrates why. There, the plaintiffs similarly claimed that hotel franchisors participated in a venture because they received a percentage of revenue ultimately generated by sex traffickers' use of their hotels and oversaw the renting of hotel rooms to the traffickers. 21 F.4th at 726. The district court rejected that theory, and the Eleventh Circuit agreed, affirming the dismissal. The Eleventh Circuit held that, while the

---

[9]   Said differently, the statute requires shared intent of the type required to consummate a conspiracy. *See, e.g.*, *United States v. Wearing*, 865 F.3d 553, 556 (7th Cir. 2017) (courts cannot "ignore the fact that Congress chose the *future* tense" in enacting Section 1591). At best, Plaintiff pleads accomplice after the fact-type liability, which is insufficient under Section 1591(a).

plaintiffs' "allegations may suggest that the franchisors financially benefitted [sic]" from hosting traffickers, they "[did] nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA." *Id.* at 726–27. It was also not enough for the plaintiffs to allege that the franchisors knew illegal activity happened on the premises, because "observing something is not the same thing as participating in it." *Id.* at 727.

The same is true here. Like in *Red Roof Inns*, Plaintiff alleges only that Fenix should have known that illegal activity sometimes occurred on its website and that Fenix financially benefited from hosting it. *Id.* at 726–27. But that alleged incidental benefit does not mean that Fenix and the Tort Defendants took part "in a common undertaking involving risk or profit." *Id.* at 727; *see also K.H. v. Riti, Inc.,* No. 23-11682, 2024 WL 505063, at *3–4 (11th Cir. Feb. 9, 2024) ("[A]llegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture[.]"); *G.W. v. Northbrook Indus., Inc.*, No. 20-cv-05232, 2024 WL 3166083, at *4–5 (N.D. Ga. June 14, 2024) (observing that "[t]he common thread in the Eleventh Circuit's opinions is a requirement that the plaintiff … identify what actions the operator took to advance the object of the undertaking" and show "that the alleged participant [has] an ongoing interest in the success of a specific venture").[10]

For all of these reasons, Plaintiff fails to state a TVPRA claim against Fenix.  Plaintiff has now had three opportunities to plead a viable claim against Fenix, and her continued inability to do so illustrates that further amendment would be futile.  Accordingly, the Court should dismiss Count I without leave to amend. *See FR Tax Grp., LLC v. Kassover*, No. 17-cv-80386, 2017 WL 6346051, at *4, 5 (S.D. Fla. Aug. 2, 2017) (explaining that "because this claim is not viable, this tort cannot be a basis to assert personal jurisdiction over Defendant" and dismissing tort claims, alternatively, for lack of jurisdiction and failure to state a claim), *aff'd*, 723 F. App'x 977 (11th Cir. 2018).

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER FENIX

"[W]here the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). Here, the allegations in the SAC fail to demonstrate that this Court possesses either general or specific personal jurisdiction

---

[10]  By contrast, OnlyFans's Terms of Service explicitly prohibit the posting of illegal material on the OnlyFans platform.

over Fenix for multiple independent reasons. *See Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002) (holding a defendant may assert a *facial challenge* to jurisdiction where, as here, a complaint fails to include sufficient allegations to establish a prima facie case of personal jurisdiction).

 ***First***, there is no basis for exercising jurisdiction against Fenix because it did not engage in a "tortious act within this state" under Florida's long-arm statute. Fla. Stat. § 48.193(1)(a)(2). As noted above, where, as here, "the complaint does not adequately allege tortious conduct" as to the moving party, "there is no basis for personal jurisdiction." *Latell v. Triano*, No. 2:13-cv-565, 2014 WL 6240001, at *4 (M.D. Fla. Nov. 13, 2014); *see also PVC Windoors*, 598 F.3d at 808 (explaining that "[i]n Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action'"). That is, where the "basis for jurisdiction" is that the defendant "committed a tort in Florida" and the "only support in the record for that argument is the complaint, we must of necessity determine whether it states a cause of action in tort, in order to determine jurisdiction." *8100 R.R. Ave. Realty Tr. v. R.W. Tansill Const. Co.*, 638 So. 2d 149, 151 (Fla. 4th DCA 1994). Here, the SAC's sole claim against Fenix is incurably flawed because it fails to allege actual knowledge, and allegations that a defendant "should have known" do not show that the defendant "actually materially contributed . . . to the creation and development of the illegal postings at issue." *Marriott*, 604 F. Supp. 3d at 1365. Plaintiff's TVPRA claim is "therefore beyond the reach of Florida's long-arm statute." *PVC Windoors*, 598 F.3d at 809; *Furnari v. Shapewriter, Inc.*, 10-cv-1463, 2011 WL 253962, at *5 (M.D. Fla. Jan. 25, 2011) (dismissing complaint on jurisdictional grounds where it lacked sufficient "allegations regarding the intent of any of the Defendants at the time the promises were made").[11]

---

[11] Nor does jurisdiction exist under Section 48.193(1)(a)(1), which calls for personal jurisdiction where a cause of action arises from the act of "carrying on a business or business venture in this state." Fla. Stat. § 48.193(1)(a)(1). Aside from parroting the words of the statute (*see* SAC ¶ 7 (stating that Fenix "engaged in a continuous profit-sharing business venture with Florida content providers registered on its website"), the SAC contains no "factual, non-conclusory allegation" that would justify the exercise of jurisdiction under Section 48.193(1)(a)(1). *See Zurvita, Inc. v. Wei Xu*, No. 18-cv-02480, 2019 WL 423347, at *1 n.1 (M.D. Fla. Feb. 4, 2019) (finding that the allegations of jurisdiction under Section 48.193(1)(a)(1) was not "availing" given the lack of any "factual, non-conclusory allegation").

*Second*, the SAC fails to establish that the exercise of jurisdiction over Fenix would satisfy the Due Process Clause. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (noting that the Due Process Clause requires sufficient minimum contacts such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice") (citation omitted). Contrary to Plaintiff's allegations, "for personal jurisdiction in the internet context, 'the internet user [or service] must intentionally direct [its] activity or operation at the forum state rather than just having the activity or operation accessible there[.]'" *McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *4 (11th Cir. June 12, 2023) (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011) (cleaned up). The fact that the OnlyFans platform is accessible in Florida (as it is globally) is insufficient to support the exercise of jurisdiction here. *See HSC Organics LLC v. Bymaster*, No. 21-cv-1852, 2022 WL 2275171, at *4 (M.D. Fla. June 23, 2022) (holding that the "mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction'") (citation omitted).[12]

Moreover, Plaintiff's TVPRA claim does not "arise from" any acts that Fenix allegedly committed in Florida. *See Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1135 (Fla. 3d DCA 2018). Interpreted in the light most favourable to Plaintiff, the SAC alleges that: (1) the Tort Defendants engaged in and videorecorded tortious acts in Florida and later uploaded the video to OnlyFans; (2) the video was allegedly available on the global OnlyFans platform for purchase; and (3) Plaintiff experienced harm from the Tort Defendants' alleged tortious conduct in Florida. (SAC ¶¶ 22-36.) While these allegations concern acts by the *Tort Defendants* in Florida, they do not relate to any tortious act deliberately committed by *Fenix* in Florida. *See Fraser v. Smith*, 594 F.3d 842, 851-52 (11th Cir. 2010) (holding that tort claims from a boat exploding in Caribbean were not a reasonably foreseeable result from purchasing a boat in Florida); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1223 (11th Cir. 2009) (holding that sustaining injuries on a third-party's fishing vessel was not a foreseeable consequence of a Costa Rican resort's website advertising the resort and its "unique sport fishing" amenities).

---

[12]   *See Muto v. Fenix Int'l Ltd.*, No. 22-cv-02164, 2024 WL 2148734, at *4 (C.D. Cal. May 2, 2024) (finding no specific jurisdiction over Fenix as "the mere operation of [an] interactive website visited by residents of a particular state does not, by itself, establish that [Fenix] either expressly aimed its conduct at that state or deliberately reached out to it") (cleaned up).

**Third**, although the SAC appears to assert a theory of general jurisdiction based on the allegation that Fenix engages in "continuous activities and business venture in this state," (SAC ¶ 7), that allegation is simply a legal conclusion devoid of any facts. *See Lapidus v. NCL Am. LLC*, 12-cv-21183, 2013 WL 646185, at \*7 (S.D. Fla. Feb. 14, 2013) (finding that jurisdictional allegations "too conclusory to support a finding of general jurisdiction," including allegation that defendant "was administering a website in Florida"). In any event, a corporation can be subject to general jurisdiction in a state *other* than its state of incorporation or principal place of business only in a rare and "exceptional case." *Daimler AG v. Bauman*, 571 U.S. 117, 139, n.19 (2014). The SAC readily admits that Fenix "was formed and is based in the United Kingdom" (SAC ¶ 27), and otherwise contains no facts that would support general jurisdiction over Fenix.

## III.   PLAINTIFF'S STATE-LAW CLAIMS SHOULD BE SEVERED AND REMANDED.

This action was properly removed under 28 U.S.C. § 1441(c) because this Court has original jurisdiction over the TVPRA claim against Fenix.[13] However, pursuant to Section 1441(c)(2), the Court should sever and remand Plaintiff's state-law claims against the Tort Defendants because they are not within the Court's supplemental jurisdiction."[14]

### A.   The Court Cannot Exercise Supplemental Jurisdiction Over the State-Law Claims Because They Do Not Derive from a "Common Nucleus of Operative Fact."

Plaintiff's state-law claims against the Tort Defendants are not within the Court's supplemental jurisdiction because they do not "derive from a common nucleus of operative fact" as Plaintiff's TVPRA claim. *See* 28 U.S.C. § 1367(a); *Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 679 (11th Cir. 2012) ("We take the nucleus of facts on which the federal question claims are based and compare it to the nucleus of facts on which the state law claims are based."). Here, the nucleus of the federal claim is distinct from that of the state-law claims for at least three reasons.

**First**, Plaintiff's state-law claims against the Tort Defendants are separate actions that

---

[13]  Plaintiff filed the Complaint on October 19, 2022 in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. (*See generally* ECF No. 1-1.) This action was removed from state court to this Court on November 18, 2022, on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441(c), and 1446. (*See* ECF No. 1.)

[14]  The state-law claims against the Tort Defendants do not arise under this Court's original jurisdiction, *see* 28 U.S.C. § 1331, nor are they within the Court's diversity jurisdiction, 28 U.S.C. § 1332, because Plaintiff alleges that she is a resident of Broward County, Florida, and that the Tort Defendants are residents of Miami-Dade County, Florida. (SAC ¶¶ 2–4.)

make no mention of either the alleged federal TVPRA violation, or Fenix. Plaintiff's state-law claims focus exclusively on the Tort Defendants' alleged non-consensual sexual act, but her federal claim against Fenix arises from the Tort Defendants' publication of a video on OnlyFans. In similar circumstances, courts in this District have held that severance and remand are proper. *Mercado v. Cong. Auto Parts Co.*, No. 18-cv-80325, 2018 WL 3353059, at *2 (S.D. Fla. June 13, 2018) ("[A]t no point in Count IV [did] Plaintiff mention the harassment or discrimination he endured during his employment with Defendant, or that such harassment played any role in inducing Defendant to interfere with Plaintiff's employment at the pizza delivery company. As a result, Plaintiff's claim … must be remanded."). That there may be some overlapping factual questions between the two claims is no deterrent to a finding that they arise from distinct nucleuses of common facts where, as here, the claims involve substantially separate factual and legal issues. *See, e.g.*, *Software Brokers of Am., Inc. v. Doticom Corp.*, 484 F. Supp. 3d 1205, 1211 (S.D. Fla. 2020) (holding that claims arose from separate nucleuses of operative facts where they "may involv[e] a few overlapping fact witnesses,'" but where one claim would nonetheless "take the Court on a totally different journey than Plaintiff's [other] claims'").

**Second**, the state-law tort claims arise from an alleged non-consensual sexual act that occurred prior to any alleged TVPRA violation. (*Compare* SAC ¶¶ 12, 37, 41, 47, 51 (alleging that the intentional torts were committed on April 29, 2022), *with id.* ¶ 18 (alleging that one of the Tort Defendants "subsequently edited and uploaded the video footage" to OnlyFans).) Temporally disparate claims do not arise out of a common nucleus of operative fact. *See Mercado*, 2018 WL 3353059, at *2 (holding that the plaintiff's federal ADA claim arose from the defendant's harassing conduct during the plaintiff's employment, while the tortious interference claim arose from the defendant's harassing conduct **after** the plaintiff's employment ended, thus meaning the court lacked supplemental jurisdiction over the state claims). This reasoning applies equally here given that the SAC alleges temporally disparate state and federal claims. *See Upper Chattahoochee Riverkeeper Fund*, 701 F.3d at 679-80 (holding that the district court abused its discretion in exercising jurisdiction over the plaintiff's state-law claims that arose after her federal claims).

**Third**, the intentional tort claims and the TVPRA claim constitute separate injuries that do not rely on identical actions of the Tort Defendants such that they satisfy the test for supplemental jurisdiction. *Cf. Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 14 (1951) (holding that the exercise of supplemental jurisdiction under 1441(c) is proper "where there is a single wrong to plaintiff, for

which relief is sought, arising from an interlocked series of transactions"). Plaintiff alleges that she was injured by the Tort Defendants' non-consensual sexual act on April 29, 2022. (SAC ¶¶ 12–14.) Plaintiff separately alleges she was injured again when the Tort Defendants posted the video recording of the non-consensual sex act months later. (*Id.* ¶ 18.) These alleged events give rise to separate alleged injuries under Eleventh Circuit precedent. *See Lucero v. Trosch*, 121 F.3d 591, 598 (11th Cir. 1997) (affirming exercise of supplemental jurisdiction where federal and state-law claims relied on "*the identical actions of [the] defendants*") (emphasis added).

>    B.    The Court Should Decline to Exercise Discretion to Assert Supplemental Jurisdiction Over the State-Law Claims.

The Court should also exercise its discretion to remand the state-law tort claims, because they predominate over the federal claim. The Court may decline to exercise supplemental jurisdiction over a state-law claim where any of the following statutory factors are present: (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). Courts in this District regularly decline to exercise supplemental jurisdiction where, as here, a "claim under Florida state law 'constitutes the real body of the case,'" and therefore "predominates the federal claims." *Longino v. Martinez*, No. 22-cv-22010, 2022 WL 3279539, at *5 (S.D. Fla. Aug. 11, 2022) (citation omitted).

Here, Plaintiff's state-law intentional tort claims constitute "the real body of the case" and predominate over the federal TVPRA claim. *Id.* Factual determinations related to the alleged non-consensual sexual act and Plaintiff's physical and emotional harm will constitute the primary focus of the case, and any trial in the matter would be almost exclusively focused on those issues. On the other hand, the federal TVPRA claim is an "appendage" to those state-law claims. *Id.* It is a peripheral question concerning whether, by operation of law, derivative liability may attach to Fenix based on separate acts of the Tort Defendants—specifically, their temporary posting of footage to OnlyFans. Under these circumstances, supplemental jurisdiction should not be exercised. *Id.*

Principles of comity, fairness, and convenience all support the severance and remand of the state-law claims to state court. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). "Florida state courts are best suited to resolve Florida law issues," and where a case is

"still in its infancy," remanding issues arising under state law promotes "fairness and convenience" while "negating any prejudice or undue burden." *See Shaw v. Strange*, No. 22-cv-51, 2022 WL 971892, at *2 (M.D. Fla. Mar. 31, 2022). Here, Plaintiff's allegations of battery and infliction of emotional distress are purely Florida law issues, and Florida state courts are best suited to resolve them. Because this case is in its infancy, neither Plaintiff nor the Tort Defendants would be prejudiced by litigating the intentional tort claims in state court where they were originally brought.

Finally, the risk of unfair prejudice to Fenix as a result of juror confusion and bias is significant given the nature of the allegations against the Tort Defendants. Trying these claims together would require a jury to weigh factual issues related to alleged non-consensual sex acts under Florida state law, while also separately addressing questions of federal law concerning the nuanced application of the TVPRA in the context of online platforms and policies, which implicate First Amendment and Section 230 immunity concerns.[15] The risk that a jury would be unable to fairly weigh the evidence and separately assess liability between the Tort Defendants and Fenix favors severance and remand. *See Draughon v. City of Oldsmar*, 767 F. Supp. 1144, 1147 (M.D. Fla. 1991) (dismissing state-law claims without prejudice where distinct federal and state-law claims gave rise to "risk that a confused jury may not properly distinguish the claims and parties").

## CONCLUSION

For the reasons set forth above, Fenix respectfully requests that the Court grant this Motion.

---

[15] Faced with similar issues, courts have declined to exercise supplemental jurisdiction to avoid allowing state-law claims to predominate over federal ones and to avoid unfairness to defendants. For example, in *Brown v. Scaglione*, a plaintiff brought state-law battery claims and Section 1983 claims against police officers stemming from a violent encounter with the officers. No. 20-cv-10192, 2020 WL 674291 (E.D. Mich. Feb. 11, 2020). The court found that "[t]he state claims presented here raise problems, including the need to introduce evidence inapplicable to the evidence relevant to the federal claims, the presence of disparate legal theories on both claims and defenses, and the need to create expanded and contradictory jury instructions." *Id.* at *2.

DATED:  August 2, 2024               Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By  /s/ *John F. O'Sullivan*
     John F. O'Sullivan (Fla. Bar No. 143154)
     Jason D. Sternberg (Fla. Bar No. 72887)
     2601 South Bayshore Drive, Suite 1550
     Miami, Florida 33133
     johnosullivan@quinnemanuel.com
     jasonsternberg@quinnemanuel.com
     Secondary: olgagarcia@quinnemanuel.com
     (305) 439-5008

     *Counsel for Defendant Fenix International Limited*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of August, 2024, a true and correct copy of the foregoing document was electronically transmitted to all counsel of record via the CM/ECF system.

By:  /s/ *John F. O'Sullivan*
John F. O'Sullivan
Florida Bar No. 143154
johnosullivan@quinnemanuel.com