**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CV-62176-ALTMAN/STRAUSS**

JANE DOE,

      Plaintiff,

v.

FENIX INTERNATIONAL LIMITED, *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Fenix International Limited's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim and Motion to Sever and Remand State-Law Claims ("Motion") [DE 65], which has been referred to me for a report and recommendation [DE 72]. I have reviewed the Motion, the Response [DE 68] and Reply [DE 71] thereto, and Plaintiff's Second Amended Complaint ("SAC") [DE 63]. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 65] be **GRANTED** as set forth herein, with Count I being dismissed as to Defendant Fenix International Limited ("Fenix").

## BACKGROUND

Fenix is a United Kingdom corporation that owns and operates OnlyFans.com ("OnlyFans"). SAC ¶¶ 6, 9. OnlyFans is a website that allows users to pay for pornographic content uploaded by individual content creators. *Id.* ¶ 9. Defendant Michelson Romelus ("Romelus") is a verified OnlyFans content creator and internet personality who uploads pornographic content for sale on OnlyFans. *Id.* ¶ 10. To create an OnlyFans account, Fenix requires content creators (including Romelus) to upload personal identification (e.g., driver's

license), to add links to social media accounts, and to engage with a facial recognition software to verify the content creator's identity.  *Id.* ¶ 11.

In April 2022, Defendant Bendjy Charles ("Charles") and Romelus raped Plaintiff.  *Id.* ¶ 5.  Charles and Romelus filmed each other while they raped Plaintiff.  *Id.* ¶ 14.  Romelus subsequently uploaded video footage of Romelus and Charles raping Plaintiff, with Plaintiff crying and screaming while they raped her, to OnlyFans and began to sell the footage on OnlyFans as a part of a monthly subscription package.  *Id.* ¶ 18.  Fenix profited from sales of the video footage that Romelus posted on OnlyFans.  *Id.* ¶ 20.

The SAC contains five claims.  In Count I, Plaintiff brings a claim against all Defendants under the Trafficking Victims Protection Reauthorization Act ("TVPRA").  The remaining four counts raise state-law battery and intentional infliction of emotional distress claims against Romelus and Charles.  The Motion seeks dismissal of Count I as to Fenix.

## LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face."  *Id.* at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The mere possibility

the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

Count I of the SAC should be dismissed as to Fenix. Fenix contends that it is immune from Plaintiff's TVPRA claim under the Communications Decency Act ("CDA"), which "establish[es] broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).[1] Specifically, Fenix claims immunity under section 230(c)(1) of the CDA, which states

---

[1] In the Motion, Fenix also argues that the claim against it should be dismissed on other grounds, including that the Court lacks personal jurisdiction over Fenix. Additionally, Fenix argues that Plaintiff's state-law claims against Romelus and Charles should be severed and remanded to state court. Because I agree with Fenix that it should be dismissed from this action on immunity grounds, I do not reach Fenix's other arguments.

that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  "[D]eterminations of immunity under the CDA should be resolved at an earlier stage of litigation."  *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2014); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) ("We thus aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'").  "When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed."  *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019).

Section 230 "immunity has three elements: '(1) the defendant is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat the defendant as the publisher or speaker of that information.'"  *La Liberte v. Reid*, 966 F.3d 79, 89 (2d Cir. 2020) (alteration adopted) (citation omitted); *see also Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 119 (4th Cir. 2022); *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1363-64 (S.D. Fla. 2022).  An "interactive computer service" is an "information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  47 U.S.C. § 230(f)(2).  An "information content provider" is a "person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).  Although immunity under the CDA is broad, it is not limitless.

*Almeida*, 456 F.3d at 1322.  Here, the parties dispute whether two CDA limitations apply.  Those limitations are discussed in the sections that follow.

### 1.  Whether Fenix Acted as an Information Content Provider

The first limitation at issue is one that strips interactive computer services of CDA immunity when they are also an information content provider for the content at issue.[2]  Fenix contends that the allegations in the SAC only show that Fenix is an interactive computer service and that the allegations do not plausibly establish that Fenix is an information content provider.  While Plaintiff does not dispute that Fenix is an interactive computer service, Plaintiff contends that Fenix also acted as an information content provider, and therefore, is not immune.

In this regard, courts have explained that § "230(c)(1)'s grant of immunity . . . applies only to the extent that an interactive computer service provider is not also the information content provider of the content at issue."  *Dirty World*, 755 F.3d at 408.  "A website operator can simultaneously act as both a service provider and a content provider."  *Id.*  "Under the statutory scheme, an 'interactive computer service' qualifies for immunity so long as it does not also function as an 'information content provider' for the portion of the statement or publication at issue."  *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1007 (9th Cir. 2023) (quoting *Carafano v. Metrosplash.com., Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003)).  The statute defines an "information content provider" as one who is wholly *or partly* responsible for the creation or development of the content at issue.  *See* § 230(f)(3); *see also Dirty World*, 755 F.3d at 408 ("[I]f a website operator is in part responsible for the creation or development of content, then it is an information content provider as to that content—and is not immune from claims predicated on it."); *McCall v. Zotos*,

---

[2] This issue goes to the element requiring that the claim be based on information provided by another information content provider.  *See Henderson*, 53 F.4th at 126-29; *Dirty World*, 755 F.3d at 408.

No. 22-11725, 2023 WL 3946827, at *2 (11th Cir. June 12, 2023) ("This definition 'cover[s] even those who are responsible for the development of content only in part.' There may be several information content providers of a single piece of content, each responsible for its creation or development in part. If the claim is based on content that the interactive computer service developed, even if only in part, then the service could be held liable." (internal citations omitted)).

"The meanings of the words 'creation' and 'development' are hardly self evident in the online world." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016).  Most courts have interpreted these terms by applying a "material contribution" test to evaluate whether a website operator is wholly or partly responsible for creating or developing the unlawful content.  *See, e.g.*, *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1167-71 (9th Cir. 2008); *Dirty World*, 755 F.3d at 410-17; *see also Kimzey*, 836 F.3d at 1269 n.4 (noting that other circuits have generally adopted *Roommates.Com*'s "material contribution" test).  Under that test, a website operator "is responsible for the development of the information at issue in the case if they directly and materially contributed to what made the content itself unlawful." *Henderson*, 53 F.4th at 127 (citing and quoting *Force v. Facebook*, 934 F.3d 53, 68 (2d Cir. 2019)) (internal quotation marks and footnote omitted); *see also Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024) ("We have interpreted the phrase 'creation or development in whole or in part' in § 230(f)(3) to mean that 'a website helps to develop unlawful content . . . if it contributes materially to the alleged illegality of the conduct.'" (quoting *Roommates.Com*, 521 F.3d at 1167-68)).  "[A] website may lose immunity under the CDA by making a material contribution to the creation or development of content." *Kimzey*, 836 F.3d at 1269; *see also Calise*, 103 F.4th at 737 ("We have explained that § 230(c)(1) immunity does not attach when the defendant 'materially

contributed' to the 'creation or development' of the offending content." (citation omitted) (alteration adopted)).

"A material contribution to the alleged illegality of the content does not mean merely taking action that is necessary to the display of allegedly illegal content. Rather, it means being responsible for what makes the displayed content allegedly unlawful." *Dirty World*, 755 F.3d at 410; *see also Henderson*, 53 F.4th at 128 ("[Section] 230(c)(1)'s third requirement did not turn on whether the defendant materially contributed to some part of the total information disseminated— i.e., the entire post—but on whether the defendant materially contributed to the defamatory aspect of the information." (citations omitted)).

Websites do not create or develop content when they "merely provide[] a neutral means by which third parties can post information of their own independent choosing online." *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1008 (9th Cir. 2023) (quoting *Kimzey*, 836 F.3d at 1270); *see also Calise*, 103 F.4th at 745 ("[A]n internet company providing tools that can be manipulated by third parties for unlawful purposes does not always defeat § 230(c)(1) immunity. Rather, providing neutral tools as to the alleged unlawfulness does not amount to development."). "[L]iability for an interactive computer service user or provider must turn on 'something more than . . . its traditional editorial function.'" *Henderson*, 53 F.4th at 127 (quoting *Nemet*, 591 F.3d at 258). "Lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content— are barred." *McCall*, 2023 WL 3946827, at *3 (quoting *Zeran*, 129 F.3d at 330) (alteration omitted). Thus, "an interactive computer service is not responsible for developing the unlawful information unless they have gone beyond the exercise of traditional editorial functions and materially contributed to what made the content unlawful." *Henderson*, 53 F.4th at 128.

7

In the Motion, Fenix argues that Plaintiff has failed to adequately allege that Fenix acted as an information content provider because the allegations in the SAC do not show that Fenix contributed to the illegality of the content that Romelus uploaded to OnlyFans.  Instead, Fenix asserts that the SAC focuses on Fenix's alleged failure to enact safeguards and on Fenix's generally applicable policies without tying Fenix's conduct to the creation or development of the illegal content at issue here.

In the portion of her response addressing whether Fenix acted as an information content provider, Plaintiff initially contends that a website is not immune under the CDA if it augments a third-party's content *or* materially contributes to the unlawfulness of the conduct.  Both parties seem to agree that this Court should apply the material-contribution test that most courts have applied to determine whether Fenix acted as an information content provider.  To the extent Plaintiff is suggesting that "augmentation" that does not "materially contribute" constitutes "development" of content, however, that contention is misplaced as a website does not become an information content provider by merely augmenting content generally.  *See L.H.*, 604 F. Supp. 3d at 1364 ("[T]he term 'development' is interpreted to refer 'not merely to augmenting the content generally, but to materially contributing to its alleged unlawfulness.'" (quoting *Roommates.Com*, 521 F.3d at 1167-68)).

At any rate, Plaintiff asserts that the SAC contains adequate allegations to satisfy the material-contribution test because Plaintiff has alleged that Fenix:

> (a) required Romelus to include social media hyperlinks in his profile, which in turn focused on sexually exploiting "drunk girls," "stupid college girls," "freaky girls," and so forth [ECF No. 63 at ¶¶ 33-34]; (b) displayed a check mark next to Romelus' name showing that he was "verified" and creating the impression he should be trusted [*id.* at ¶¶ 30, 32]; (c) created its own content and webpage posts, which linked viewers to Romelus' profile and videos and which added new captions, new video and content summaries, new animations and/or new video thumbnails [*id.* at ¶ 35]; (d) failed to enact or enforce any safeguards to remove

trafficked material from the website [*id.* at ¶ 20]; (e) anonymized web traffic and utilized a paywall in order to make it easier for content providers to sell illegal material on the website [*id.* at ¶ 29]; (f) failed to enforce its alleged corporate policy requiring a signed release form showing consent by any third party (like Plaintiff) who appears in a posted video [*id.* at ¶ 21] and (g) took a 20% share of the profits from all of Romelus' videos.

[DE 68] at 11.  In its reply, Fenix asserts that these allegations amount to two types of alleged wrongdoing by Fenix – "that Fenix (i) did not enact sufficient safeguards that might have prevented the upload of the video in the first instance, and (ii) somehow encouraged both the creation of unlawful content and user interaction with such content by maintaining policies generally applicable to all content, creators, and users." [DE 71] at 7.  Pointing to persuasive case law, Fenix contends that Plaintiff's allegations far well short of what is needed to overcome CDA immunity. I agree.

Plaintiff contends that her allegations "when viewed as a whole and in a light most favorable to Plaintiff . . . materially contributed to the unlawfulness of what occurred." [DE 68] at 11.  However, it is evident that the allegations Plaintiff emphasizes do not plausibly establish that Fenix materially contributed to the illegality of the content.  That is true regardless of whether the allegations are viewed singly or in combination.  In other words, this is not a situation where the sum is greater than its parts.

Of all the allegations Plaintiff emphasizes, the one most pertinent to whether Fenix "materially contributed" to the unlawful content is Plaintiff's allegation that Fenix "advertised the profiles and/or webpages of its content creators, including Defendant Michelson Romelus, by creating content and webpage posts which linked viewers to the content creators' profile and videos, as well as added new captions, new video and content summaries, new animations, and/or new video thumbnails." SAC ¶ 35.  Through this allegation, however, all Plaintiff alleges is that Fenix created *unalleged or unknown* "content and webpage posts" and summaries, animations,

*and/or* thumbnails.  In other words, Plaintiff does not allege what specific content Fenix created. Thus, the allegation merely contains "naked assertions devoid of further factual enhancement." *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1269 (11th Cir. 2023).  But "'naked assertions devoid of further factual enhancement' are not well-pled facts that must be accepted as true and will not be sufficient to withstand a motion to dismiss." *Jones v. CitiMortgage, Inc.*, 666 F. App'x 766, 772 (11th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

Moreover, the SAC is predicated on content created by the other defendants, not on any content that Fenix created.  But for Fenix to lose immunity, Plaintiff's claim must be predicated on content created or developed (at least partially) by Fenix.  *See Dirty World*, 755 F.3d at 408 ("[I]f a website operator is in part responsible for the creation or development of content, then it is an information content provider as to that content—and is not immune from claims *predicated on it*." (emphasis added)).  While Fenix adding summaries, animations, or thumbnails could conceivably play a role in developing the content at issue here, Plaintiff has not alleged any specific summaries, animations, or thumbnails that Fenix created are at issue here.  *See Dyroff*, 934 F.3d at 1097 ("An interactive computer service, like Ultimate Software, can also be an information content provider, but that is only relevant, for the purposes of Section 230 immunity, if the website it operates creates or develops *the specific content at issue*." (citing *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003)) (emphasis added)).

Nor has Plaintiff alleged how any summaries, animations, or thumbnails Fenix created played any role in contributing (materially or otherwise) to what made the content posted by Romelus (the content that is at issue here) unlawful.  *See Force*, 934 F.3d at 68 ("[A] defendant will not be considered to have developed third-party content unless the defendant directly and 'materially' contributed to what made the content itself 'unlawful.'"); *see also Henderson*, 53 F.4th

at 128 ("Whether a defendant developed information such that they are an 'information content provider' turns on whether the defendant has materially contributed to the piece(s) of information relevant to liability. Section 230(c)(1) applies if a defendant has materially contributed only to parts of the disseminated information that do not make the disseminated information unlawful (if § 230(c)(1) is otherwise applicable).").   In other words, Plaintiff has failed to include any allegations to show how any content Fenix created or developed enhanced the illegality of the content provided by Romelus. *Cf. Kimzey*, 836 F.3d at 1270 ("[T]he rating system does 'absolutely nothing to enhance the defamatory sting of the message' beyond the words offered by the user.").

Rather, Plaintiff has simply alleged that Fenix creates summaries, animations, *and/or* thumbnails to link viewers to content creators' profiles, irrespective of what content those profiles contain (i.e., that Fenix acts in a content-neutral manner).  *Cf. Doe v. WebGroup Czech Republic, A.S.*, No. 2:21-CV-02428 SPG(SKX), 2024 WL 3533426, at *8 (C.D. Cal. July 24, 2024) ("If, however, Defendants create thumbnails from 'all videos,' then this appears either to be a standard publishing function or a neutral tool made available to all third parties seeking to upload material onto Defendants' websites." (internal citation omitted)).  But "proliferation and dissemination of content does not equal creation or development of content."  *Kimzey*, 836 F.3d at 1271; *see also Force*, 934 F.3d at 70 ("[M]aking information more available is, again, an essential part of traditional *publishing*; it does not amount to 'developing' that information within the meaning of Section 230.");  *Dowbenko v. Google Inc.*, 582 F. App'x 801, 805 (11th Cir. 2014) (finding claim to be barred by § 230(c)(1) notwithstanding "the allegation that Google manipulated its search results to prominently feature the article at issue").  Additionally, Plaintiff has not alleged that any of Fenix's summaries, animations, or content are themselves actionable.  The CDA, however, "bars claims lodged against website operators for their editorial functions, such as the posting of

comments concerning third-party posts, so long as those comments are not themselves actionable." *Dirty World*, 755 F.3d at 416.

Plaintiff's other allegations do not fare any better.  First, Plaintiff's allegation that Fenix required "all content creators" to provide hyperlinks to their social media profiles (*see* SAC ¶ 33) is also a content neutral policy.  While Plaintiff alleges that Romelus' social media links focused on exploiting women insofar as his social media accounts included captions like "exposing drunk girls," "exposing stupid college students," "exposing freaky girls," and "she wants me" (SAC ¶ 34), Plaintiff does not allege that Fenix required Romelus or other content creators to post specific content.  *Cf. Dyroff*, 934 F.3d at 1099 ("Plaintiff is unable to allege that Ultimate Software materially contributed to the content posted on Experience Project that led to Greer's death. Plaintiff cannot and does not plead that Ultimate Software required users to post specific content, made suggestions regarding the content of potential user posts, or contributed to making unlawful or objectionable user posts.").[3]

Second, Plaintiff relies on her allegation that Fenix placed check marks next to the names and profiles of content creators (including Romelus) whose identities Defendant verified.  SAC ¶ 32.  However, the fact that Fenix verified Romelus' identity has no bearing on whether Fenix contributed to the unlawfulness of the content at issue.[4]

---

[3] *See also Force*, 934 F.3d at 69 ("[A] defendant may, in some circumstances, be a developer of its users' content if it encourages or advises users to provide the specific actionable content that forms the basis for the claim." (citing *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 176 (2d Cir. 2016))); *Dirty World*, 755 F.3d at 416 ("[T]he website . . . did not require users to post illegal or actionable content as a condition of use."); *L.H.*, 604 F. Supp. 3d at 1364 ("[A] website will be found to have materially contributed to the unlawful nature of content where it pointedly solicited such content, essentially compelling users to engage in illegal conduct as a condition to using the platform.").

[4] To the extent that Plaintiff is insinuating that Fenix somehow adopted or ratified the unlawful conduct here, such a ratification or adoption theory would run counter to the material contribution test.  *See Dirty World*, 755 F.3d at 415-17.

Third, Plaintiff notes that she has alleged that Fenix failed to enact or enforce safeguards to remove trafficked material from its website.  This allegation, however, goes to the very heart of what is immunized by the CDA.  *See McCall*, 2023 WL 3946827, at *3 ("The plaintiffs seek to hold Amazon liable for failing to take down Ms. Zotos' review, which is exactly the kind of claim that is immunized by the CDA—one that treats Amazon as the publisher of that information."); *Calise*, 103 F.4th at 740 ("Because removing content is something publishers do, imposing liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." (cleaned up) (internal quotation marks and citation omitted)); *L.H.*, 604 F. Supp. 3d at 1365 ("[C]raigslist's failure to prevent or remove the postings is precisely the type of conduct Congress sought to immunize."); *see also Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1182 (9th Cir. 2024) ("Section 230 prohibits holding companies responsible for moderating or failing to moderate content.").

Fourth, Plaintiff emphasizes her allegation that Fenix anonymized web traffic and used a paywall.  SAC ¶ 29.  She asserts that Fenix did so to make it easier for content providers to sell illegal pornography.  *Id.*  As an initial matter, Plaintiff's sole allegation regarding anonymity of web traffic and use of a paywall is a naked assertion devoid of factual enhancement.  *See id.* ("Defendant FIL violated 18 U.S.C. § 1595(a) by knowingly benefitting from profit- sharing in a commercial venture by anonymizing web traffic and utilizing a paywall to make it easier for individuals to sell illegal pornographic material.").  In other words, this single conclusory allegation is vague and uses the labels of "anonymizing web traffic" and "utilizing a paywall" without any factual enhancement or explanation.

At any rate, it is unclear how use of a paywall would make it any easier to sell *illegal* pornographic material.  Nor does use of a paywall plausibly suggest that Fenix encouraged content

providers to post *illegal* content.  It is likewise unclear how anonymizing web traffic (whatever Plaintiff means by that in this context) affects the calculus.  In referring to her allegation regarding anonymity, Plaintiff points to a district court case where one of the allegations was that the defendant websites "use[d] a VPN and a Tor site to anonymize web traffic, making it difficult for law enforcement to locate child pornography producers."  *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 842 (C.D. Cal. 2021).  Here, it is unclear what Plaintiff means by "anonymizing web traffic."  However, she does not appear to be alleging that Fenix is trying to hide the identities of content creators given that Plaintiff separately alleges that Fenix requires identification from Romelus and other content creators.  *See* SAC ¶¶ 11, 32.  To the extent that Plaintiff is alleging Fenix anonymizes the identity of users, it is unclear how that somehow translates to doing so for the purpose of making it easier to sell *illegal* pornography.  Regardless, Plaintiff's allegations regarding anonymity and a paywall do nothing to show how Fenix encouraged the posting of illegal content or otherwise materially contributed to the unlawfulness of the content posted by Romelus.[5]

Fifth, Plaintiff relies on her allegation that Fenix failed to enforce its policy requiring the submission of signed releases for third parties appearing in videos.  SAC ¶ 21.  However, this allegation, like others, fails to show how Fenix materially contributed to the illegality of the content

---

[5] *Cf. WebGroup*, 2024 WL 3533426, at *8 ("Plaintiff alleges that Defendants use VPNs to anonymize web traffic, making it difficult for law enforcement to locate CSAM on its websites. Again, however, Plaintiff has not made clear why the use of VPNs is, in itself, a sign that Defendants materially contributed to the unlawful content posted to its websites, rather than a neutral tool protected under Section 230."); *see also Est. of Bride*, 112 F.4th at 1181 (rejecting attempt to overcome CDA immunity where the plaintiffs' theory attempted to hold defendant "liable as a publisher of third-party content, based in part on the design feature of anonymity"); *L.H.*, 604 F. Supp. 3d at 1365 ("[T]he complaint does not provide any facts showing that craigslist actually 'encouraged' the illegal trafficking posts. Instead, the factual allegations merely describe a system that *allowed* the illegal posts.").

at issue – content created and posted by others.  Moreover, "one of the purposes of Section 230 was to ensure that interactive computer services should not incur liability as developers or creators of third-party content merely because" any efforts they take to eliminate unlawful content are ineffective or inconsistent.  *Force*, 934 F.3d at 71.

Lastly, Plaintiff reiterates that Fenix received 20% of the profits from the sale of Romelus' videos.  SAC ¶ 36.  While this allegation, accepted as true, shows that Fenix benefitted from the illegal content at issue here, it does not establish that Fenix materially contributed to the content.[6]

Overall, "[v]iewed in their best light, [Plaintiff's] well-pled allegations allow us to infer no more than 'the mere possibility' that [Fenix] was responsible for the creation or development of the allegedly [illegal] content at issue."  *Nemet*, 591 F.3d at 260.  As such, Plaintiff has "failed to nudge [her] claim[] that [Fenix] is an information content provider for" the content at issue "across the line from the 'conceivable to plausible.'"  *Id*.[7]

---

[6] *Cf. WebGroup*, 2024 WL 3533426, at *7 ("[R]evenue-sharing — so long as the methods by which revenue sharing is conducted are neutral with respect to the content — is again an insufficient basis for liability here.  As was made clear in *Roommates*, if a website simply provides neutral tools specifically designed to accomplish a benign objective—e.g., posting videos and allowing for monetization based on views—the website cannot be said to be a co-developer of illicit content." (internal citation omitted)).

[7] In support of her material contribution argument, Plaintiff substantially relies on two district court cases, but both are distinguishable.  *See Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136 (N.D. Ala. 2022); *Mindgeek*, 558 F. Supp. 3d 828.  Those cases involved much more specific allegations of the defendants materially contributing to the illegal content themselves.  For instance, in *MG Freesites*, "the complaint allege[d] that Defendants *themselves* generate[d] tags, categories, and keywords that users wishing to post CSAM [child sexual abuse material] videos can use, and in fact are encouraged to use, to maximize views, such [as] 'teen,' 'abused teen,' and 'middle school girls.'"  *MG Freesites*, 676 F. Supp. 3d at 1162.  The defendants also allegedly "create[d] timelines for viewers to jump around to certain labeled scenes in videos depicting CSAM," "employ[ed] coded language for CSAM content to ensure that such content is visible to users who search for it," edited "advertisements to market to pedophiles by including terms associated with CSAM," and "controll[ed] the content in each video through extensive instructions to uploaders including the type of content viewers wish to see and the sex acts to take place."  *Id.*  The court explained that "the allegations are that Defendants' tools themselves function in a way to direct users to CSAM in particular, as opposed to treating CSAM the same way that lawful videos on Defendants'

## 2.  Exception to Immunity Under 47 U.S.C. § 230(e)(5)(A)

The second limitation to immunity under the CDA that is at issue here is an exception to immunity that was added to § 230 in 2018 when Congress enacted the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA").  *See Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1292 (D.C. Cir. 2023); *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1139-41 (9th Cir. 2022).  That exception provides that nothing in § 230(c)(1) "shall be construed to impair or limit . . . any claim in a civil action brought under [18 U.S.C. § 1595], if the conduct underlying the claim constitutes a violation of" 18 U.S.C. § 1591.  47 U.S.C. § 230(e)(5)(A).  Thus, to come within the ambit of § 230(e)(5)(A)'s exception to immunity, "the conduct underlying the claim" must constitute a violation of § 1591.  That means that "the availability of FOSTA's immunity exception is contingent upon a plaintiff proving that a defendant-website's own conduct—rather than its users' conduct—resulted in a violation of 18 U.S.C. § 1591." *Reddit*, 51 F.4th at 1139.

In the Motion, Fenix argues that Plaintiff is required to establish Defendant's actual knowledge of the criminal conduct prohibited by the TVPRA, and Fenix contends that Plaintiff has failed to plausibly allege actual knowledge.  Plaintiff responds that constructive knowledge is sufficient for the exception to apply, but regardless, she contends that she has adequately pled actual knowledge.  As discussed herein, I agree with Fenix that, based on the allegations of the SAC, the FOSTA exception to immunity does not apply here.

---

websites are treated." *Id.* at 1163.  In *Mindgeek*, the plaintiff alleged, *inter alia*, that the defendants: (1) "established guidelines for categories, tags, and titles that Defendants direct traffickers to create and promote child pornography to target the 'right' fans"; (2) "curate[d] video playlists with titles such as 'less than 18,' 'the best collection of young boys,' and 'under-age,' clearly indicat[ing] Defendants' role in the development of child pornography on their platforms"; and (3) provided "guidance and directions to users call[ing] directly for child pornography."  558 F. Supp. 3d at 842.  While certain allegations from *MG Freesites* and *Mindgeek* may be similar to certain allegations in this case, the types of allegations in those cases that had the most bearing on the issue of material contribution are not present here.

The source of the parties' dispute over constructive versus actual knowledge stems from the language of §§ 1591 and 1595.  While Plaintiff brings her claim under § 1595 (where constructive knowledge suffices), the exception to CDA immunity under § 230(e)(5)(A) only applies to § 1595 claims if "the conduct underlying the claim" violates § 1591 (which does not contain constructive knowledge language).  Thus, as discussed herein, for the FOSTA exception to immunity to apply, Plaintiff would need to demonstrate that Defendant had the actual knowledge required by § 1591.

Section 1591 is a criminal sex trafficking statute under the TVPRA, whereas § 1595 provides for a civil cause of action under the TVPRA.  *See generally Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021); *Woodhull*, 72 F.4th 1286; *Reddit*, 51 F.4th 1137.  Under § 1591 (entitled "Sex trafficking of children or by force, fraud, or coercion"):

(a) Whoever knowingly--

(1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

§ 1591(a).  As reflected in §1591(a)(2), a defendant charged under that subsection must benefit (financially or by receiving something of value) "from participation in a venture . . . ."  The term "participation in a venture," as used in § 1591(a)(2), "means *knowingly* assisting, supporting, or facilitating a violation of" § 1591(a)(1).  18 U.S.C. § 1591(e)(4) (emphasis added).  Thus, §

17

1591(a)(2) "prohibits anyone from knowingly 'benefit[ting], financially or by receiving anything of value' from 'knowingly assisting, supporting, or facilitating a violation of'" § 1591(a)(1).  *Red Roof Inns*, 21 F.4th at 725 (quoting 18 U.S.C. §§ 1591(a)(2) & (e)(4)).  And as the Eleventh Circuit has explained, § 1591(a) "includes a scienter requirement . . . —a defendant must *know* 'that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act.'"  *Id.* at 724 (quoting 18 U.S.C. § 1591(a)).

A civil beneficiary claim under § 1595, on the other hand, does not have a scienter requirement; it does not require that the beneficiary *knowingly* assist, support, or facilitate a TVPRA violation.  *See id.* at 724-25.  Rather, it permits a TVPRA victim to sue "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person *knew or should have known* has engaged in an act in violation of" the TVPRA.  18 U.S.C. § 1595(a) (emphasis added).  While the term "participation in a venture" does appear in both §§ 1591 and 1595, the Eleventh Circuit has made clear – in binding case law – that the definition of the term in § 1591 does not carry over to § 1595.  *Red Roof Inns*, 21 F.4th at 724-25.  Instead, in the § 1595 context, the Eleventh Circuit has "conclude[d] that the phrase 'participation in a venture' requires that the [plaintiff] allege that the [beneficiary defendant] took part in a common undertaking or enterprise involving risk and potential profit."  *Id.* at 725.

Plaintiff's contention that actual knowledge is not required for § 230(e)(5)(A)'s exception to immunity to apply is meritless.  As described above, § 230(e)(5)(A)'s exception to immunity only applies "if the conduct underlying the claim constitutes a violation of" 18 U.S.C. § 1591.  47 U.S.C. § 230(e)(5)(A).  Thus, if actual knowledge is required to prove a violation of § 1591, then actual knowledge is required for this exception to immunity to apply.  Plaintiff initially argues that

§ 1591 does not use the term "actual knowledge" but only the term "knowing," which Plaintiff

asserts is a "generic" term that she implies requires something less than actual knowledge.

However, even one of the primary cases upon which Plaintiff relies makes clear that § 1591

"requires that the defendant have *actual knowledge* of sex trafficking at issue." *MG Freesites*, 676

F. Supp. 3d at 1155 (emphasis added).  And the same should be evident from the Eleventh Circuit's

decision in *Red Roof Inns*, which makes clear that § 1591 contains a scienter requirement.  Other

circuits have likewise made clear that § 1591 requires "actual knowledge."  *See, e.g., Reddit*, 51

F.4th at 1141.

> Next, Plaintiff argues that
>
> reading the constructive-knowledge provision in § 1595 "in pari materia" with the
> generic "knowing" provision in § 1591, the only logical conclusion to reach in order
> to harmonize these provisions without rendering any language meaningless is that
> constructive knowledge must suffice. To rule otherwise would fully negate the
> constructive-knowledge provision in § 1595 and render it completely meaningless.

[DE 68] at 8.  This argument makes little sense and is completely at odds with the Eleventh

Circuit's decision in *Red Roof Inns*.  Sections 1591 and 1595 are separate statutes.  One gives rise

to criminal liability; the other gives rise to civil liability.  The Eleventh Circuit's decision in *Red*

*Roof Inns* perfectly illustrates why the criminal statute (§ 1591) contains a scienter requirement,

whereas the civil statute (§ 1595) does not.  And it is precisely because of the "knew or should

have known" language in § 1595 (among other reasons) that the Eleventh Circuit found § 1595

does not carry over § 1591's definition of "participation in a venture" (a definition that contains

the word "knowingly").[8]  But what Plaintiff proposes to do is wholly ignore § 1591(e)(4)'s

---

[8] *See Red Roof Inns*, 21 F.4th at 724 ("If we replace 'participation in a venture' [in § 1595(a)] with
Section 1591(e)(4)'s 'knowingly assisting, supporting, or facilitating a violation of sub-section
(a)(1),' we get a nonsense sentence: benefited 'from *knowingly* assisting, supporting, or facilitating
a violation of subsection (a)(1) which that person knew *or should have known* has engaged in an
act in violation of this chapter.' In other words, the franchisors' formulation requires a plaintiff to

definition of "participation in a venture" and instead make constructive knowledge sufficient to satisfy § 1591.  That proposal runs counter to the plain language of § 1591.

Still, Plaintiff contends that *MG Freesites* highlights the argument she is making – that constructive knowledge must be sufficient under both §§ 1591 and 1595 because, if not, the constructive knowledge language in § 1595 (the "knew or should have known" language) would be meaningless.  But that is not what *MG Freesites* says.  In discussing an Ohio district court decision, *MG Freesites* explained that the Ohio court discussed what was necessary to satisfy "participation in a venture" under § 1595(a), ruling that in that context, "the plaintiff need not allege that the hotel actually participated and committed some 'overt act' that furthers the sex trafficking aspect of the venture for civil liability under the TVPRA because 'otherwise, the 'should have known' language in section 1595(a) would be meaningless.'"  *MG Freesites*, 676 F. Supp. 3d at 1155-56 (citing and quoting *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 968-71 (S.D. Ohio 2019)).[9]  In other words, all the Ohio court was saying is what the Eleventh

---

prove that the defendant knowingly facilitated a violation, making the 'should have known' language superfluous." (alteration adopted)).

[9] Notably, *M.A.* (the Ohio case discussed in *MG Freesites*) did not involve CDA immunity issues or FOSTA's exception to CDA immunity (the case was against hotels, not websites).  In fact, after discussing *M.A.*, the court in *MG Freesites* noted that "the cases establishing the pleading requirements for section 1595 claims against hotels are not on all fours with FOSTA because hotels are not 'interactive computer service providers,' and thus in those cases, neither FOSTA nor CDA immunity was considered."  *MG Freesites*, 676 F. Supp. 3d at 1156 (internal citation omitted).  Although *MG Freesites* did involve a claim of CDA immunity, the court there did not ultimately decide whether, in its view, the FOSTA exception requires a plaintiff to establish § 1591's actual knowledge requirement (the court found that the defendants lacked immunity on other grounds, so it did not decide whether the FOSTA exception to immunity applied).  *See id.* at 1153-59.  The court did note that district court cases that had decided the FOSTA exception issue had reached different conclusions.  *Id.* at 1156.  However, the cases that it pointed to as having found that a plaintiff need only satisfy § 1595's requirements (and not § 1591) for the FOSTA exception to immunity to apply were California district court cases that are no longer good law (on the FOSTA exception issue) as a result of the Ninth Circuit's decision in *Reddit* (which is discussed further below).

Circuit said in *Red Roof Inns* – if you use § 1591's definition of "participation of a venture" in § 1595, then the "knew or should have known" language in § 1595 becomes superfluous or meaningless. *See supra* note 8. That is precisely why § 1595 does not contain § 1591's definition of "participation in a venture," a definition under which constructive knowledge does not fly.

Lastly, Plaintiff points to several district court cases that she contends support her position. Most of those cases are inapposite, however, because they did not involve CDA immunity. In other words, they did not involve the language in § 230(e)(5)(A) that requires "the conduct underlying the claim" to violate § 1591 to overcome CDA immunity (i.e., the language at issue in this case). Nonetheless, one case Plaintiff cites – *Mindgeek*, 558 F. Supp. 3d 828 – does support her position. But that case is bad law (on this issue) in light of the Ninth Circuit's subsequent decision in *Reddit*,[10] which expressly held "that for a plaintiff to invoke FOSTA's immunity exception, she must plausibly allege that the website's own conduct violated section 1591." *Reddit*, 51 F.4th at 1141. Significantly, the Ninth Circuit went on to explain:

> To run afoul of § 1591, a defendant must knowingly benefit from and knowingly assist, support, or facilitate sex trafficking activities. Mere association with sex traffickers is insufficient absent some knowing "participation" in the form of assistance, support, or facilitation. The statute does not target those that merely "turn a blind eye to the source of their revenue." And knowingly benefitting from participation in such a venture requires *actual knowledge* and "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit."

*Id.* at 1145 (emphasis added) (alteration adopted) (internal citations omitted); *see also Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1251 (S.D. Fla. 2020) ("[S]ection 1591 requires knowing and active participation in sex trafficking by the defendants." (citing *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016))).

---

[10] *See Woodhull*, 72 F.4th 1304 n.6 (recognizing that *Mindgeek* was abrogated by *Reddit*).

Having determined that Plaintiff must plausibly allege facts to satisfy § 1591(a)(2)'s scienter requirement, the question becomes whether she did. Plaintiff contends she did, arguing as follows:

> [T]here are facts alleged in the complaint from which a jury could reasonably infer that Fenix did have *actual* knowledge of Romelus' intended misconduct -- not the least of which were Romelus' linked social media accounts in his Onlyfans profile which focused on sexual exploitation of "drunk girls," "stupid college students," "freaky girls," etc. [ECF No. 63 at ¶¶ 33-34.] Moreover, the video uploaded to Onlyfans depicts Romelus and Charles slapping Plaintiff and prohibiting her from leaving after she asks them to stop raping her. [ECF No. 63 at ¶ 13-15]. If Onlyfans was monitoring every video, as it affirmatively claims to do, it had actual knowledge that this video depicted non-consensual acts amounting to sexual assault.

[DE 68] at 7-8.

But the allegations upon which Plaintiff relies do not plausibly show that Fenix "knowingly assist[ed], support[ed], or facilitate[ed] a violation of" § 1591(a)(1). 18 U.S.C. § 1591(e)(4). First, the fact that Romelus' profile on OnlyFans was linked to his social media accounts, which contained captions like "exposing drunk girls," "exposing stupid college students," "exposing freaky girls" and "she wants me" (SAC ¶ 34), does not show (or even raise a plausible inference) that Fenix had knowledge that Romelus did or would rape someone. At most, it shows that Fenix perhaps should have known that Romelus engages in lewd, tasteless, creepy, and potentially misogynistic behavior. Regardless, it certainly does not show that Fenix knowingly and actively participated in Romelus' alleged sex trafficking activities. Second, assuming that the video posted to OnlyFans clearly depicts Plaintiff being raped (i.e., that one watching the video would realize what is occurring on the video), that too does not mean that Fenix actively or knowingly participated in Romelus' sex trafficking activities. Plaintiff simply *speculates* that Fenix saw the content of the video yet decided to continue to benefit from sales of the video despite knowing

what was on the video.[11]  However, speculation does not cut it.  Rather, "allegations must proffer enough factual content to 'raise a right to relief above the speculative level.'"  *Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

Ultimately, Plaintiff fails to allege how Fenix "knowingly assist[ed], support[ed], or facilitate[ed] a violation of" § 1591(a)(1).  18 U.S.C. § 1591(e)(4).  Thus, Plaintiff has failed to plausibly allege that Fenix's own conduct violated § 1591.  Therefore, FOSTA's exception to CDA immunity does not apply here.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 65] be **GRANTED** on the basis that Fenix is immune under the CDA.[12]

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Roy K. Altman, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this

---

[11] Notably, while Plaintiff contends in her response that Fenix affirmatively claims to monitor every video uploaded to OnlyFans, Plaintiff did not include any such allegation in the SAC.

[12] In her response, Plaintiff requests leave to amend her SAC "if this Court determines that Count I is deficiently pled in any way."  [DE 68] at 14-15.  However, "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."  *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1236 (11th Cir. 2022) (quoting *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018)).  Additionally, Plaintiff's request for leave to amend does not comply with Rule 7(b) because Plaintiff has not attached a copy of, or described the substance of, any proposed amendment.  *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009); *see also Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018); *Baker v. Batmasian*, 730 F. App'x 776, 781 (11th Cir. 2018).

Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 1st day of November 2024.

Jared M. Strauss
United States Magistrate Judge