UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:22-cv-62176-ALTMAN/Strauss

JANE DOE,

    Plaintiff,

v.

FENIX INTERNATIONAL LIMITED,
MICHELSON ROMELUS, and
BENDJY CHARLES,

    Defendants.
_____/

**FENIX INTERNATIONAL LIMITED'S RESPONSES TO
PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE STRAUSS'S
REPORT AND RECOMMENDATION RECOMMENDING DISMISSAL**

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................................3

*Est. of Bride ex rel. Bride v. Yolo Techs., Inc.*,
  112 F.4th 1168 (9th Cir. 2024) ................................................................................................5, 6

*Clearwater Consulting Concepts, LLP v. Imperial Premium Fin., LLC*,
  2010 WL 916392 (S.D. Fla. Mar. 11, 2010)...............................................................................4

*Couture v. Noshirvan*,
  2023 WL 8280955 (M.D. Fla. Nov. 30, 2023) ...........................................................................5

*Doe #1 v. Crowley Mar. Corp.*,
  2024 WL 1346947 (M.D. Fla. Mar. 29, 2024) .........................................................................11

*Doe #1 v. MG Freesites, LTD*,
  676 F. Supp. 3d 1136 (N.D. Ala. 2022)..................................................................................8, 9

*Doe #1 v. Red Roof Inns, Inc.*,
  21 F.4th 714 (11th Cir. 2021) ...................................................................................................11

*Doe v. Kik Interactive, Inc.*,
  482 F. Supp. 3d 1242 (S.D. Fla. 2020) .....................................................................................10

*Doe v. Mindgeek USA Inc.*,
  558 F. Supp. 3d 828 (C.D. Cal. 2021) ......................................................................................11

*Doe v. Twitter, Inc.*,
  555 F. Supp. 3d 889 (N.D. Cal. 2021), *rev'd in relevant part*, 2023 WL
  3220912 (9th Cir. May 3, 2023) ...............................................................................................12

*Doe v. WebGroup Czech Republic, a.s.*,
  2024 WL 3533426 (C.D. Cal. July 24, 2024)........................................................................5, 6

*Does 1-6 v. Reddit, Inc.*,
  51 F.4th 1137 (9th Cir. 2022) ...................................................................................................11

*Force v. Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019)....................................................................................................7, 12

*Hernandez v. Plastipak Packaging, Inc.*,
  15 F.4th 1321 (11th Cir. 2021) .................................................................................................12

*J.G. v. Northbrook Indus., Inc.*,
   619 F. Supp. 3d 1228 (N.D. Ga. 2022) ........................................................................11

*L.H. v. Marriott Int'l, Inc.*,
   604 F. Supp. 3d 1346 (S.D. Fla. 2022) ........................................................4, 5, 6, 7, 8

*McCall v. Zotos*,
   2023 WL 3946827 (11th Cir. June 12, 2023) ................................................................8

*United States ex rel. Shurick v. Boeing Co.*,
   330 F. App'x 781 (11th Cir. 2009) ................................................................................4

*T.E. v. Wyndham Hotels & Resorts, Inc.*,
   2024 WL 47440 (S.D. Ohio Feb. 7, 2024) ..................................................................11

*United States v. Schultz*,
   565 F.3d 1353 (11th Cir. 2009) .....................................................................................2

*Watson v. Philip Morris Cos., Inc.*,
   551 U.S. 142 (2007) ....................................................................................................12

*Williams v. McNeil*,
   557 F.3d 1287 (11th Cir. 2009) .................................................................................2, 7

*Woodhull Freedom Found. v. United States*,
   72 F.4th 1286 (D.C. Cir. 2023) ...................................................................................10

## Statutes and Rules

Fed. R. Civ. P. 72(b) ............................................................................................................2

18 U.S.C. § 1591(a) ..............................................................................................1, 9, 10, 11

28 U.S.C. § 636(b)(1)(C) .....................................................................................................2

47 U.S.C. § 230(c)(1) ...........................................................................................................1

47 U.S.C. § 230(e)(5)(A) .....................................................................................1, 9, 10, 12

47 U.S.C. § 230(f)(2) ...........................................................................................................1

47 U.S.C. § 230(f)(3) ...............................................................................................1, 3, 7, 9

## INTRODUCTION

In his Report and Recommendation (ECF 73), Magistrate Judge Jared M. Strauss thoroughly analyzed the two threshold issues at the heart of Plaintiff's Trafficking Victims Protection Reauthorization Act ("TVPRA") claim against Defendant Fenix International Limited ("Fenix").  There is no dispute that Fenix, which operates the popular online platform OnlyFans, is an interactive computer service provider ("ICS") of the type that is typically entitled to protection from claims based on third-party content under the Communications Decency Act ("CDA").  *See* 47 U.S.C. § 230(c)(1), (f)(2).  Plaintiff instead argues that Fenix is not entitled to the CDA's protection because (1) Fenix is also a content provider, *see id.* § 230(f)(3), and (2) the exception to CDA immunity created by the Fight Online Sex Trafficking Act ("FOSTA")—in particular, 47 U.S.C. § 230(e)(5)(A)—applies.

Magistrate Judge Strauss correctly rejected both contentions.  As to whether Fenix acted as a content provider, the Second Amended Complaint alleged, at most, that Fenix maintains and applies content-neutral policies that allegedly did not prevent Defendant Michelson Romelus from posting a video depicting an alleged criminal act.  Courts have unanimously recognized that such allegations not only fail to transform an ICS into a content provider, but also strike at the core of the CDA's protective shield.  Magistrate Judge Strauss correctly concluded—like every court to decide the issue before him—that allegations about an ICS's purported failure to filter illegal content in advance of its posting do not overcome the CDA's immunity bar.

As to the applicability of the FOSTA exception, Magistrate Judge Strauss properly concluded—again, like every court to decide the issue before him—that the FOSTA exception does not apply unless a TVPRA plaintiff plausibly alleges an ICS's violation of a criminal statute, 18 U.S.C. § 1591(a), which requires showing that the defendant had *actual knowledge* of sex trafficking.  Because the Second Amended Complaint did not allege Fenix's actual knowledge of

1

trafficking, Magistrate Judge Strauss rightly determined that Plaintiff's TVPRA claim cannot stand.

The Court should adopt Magistrate Judge Strauss's well-reasoned Report and Recommendation (ECF 73) in full, overrule Plaintiff's objections, and dismiss Plaintiff's Second Amended Complaint as against Fenix without leave to amend.

## LEGAL STANDARD

When a magistrate judge enters "a recommended disposition" of a dispositive motion upon referral of that motion, a party may object to the magistrate judge's proposed disposition within fourteen days. Fed. R. Civ. P. 72(b)(2). The objecting party must "pinpoint those portions of the magistrate's report that the district court must specially consider," and its objections must be "clear and precise," not "[f]rivolous, conclusive, or general." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009). On review of any such objection, "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). District courts review *de novo* timely and proper objections to a magistrate judge's proposed resolution of a dispositive motion. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

## RESPONSES TO OBJECTIONS

**I. Response to Objection 1: Magistrate Judge Strauss held Plaintiff to the correct pleading standard and did not overlook any of the Second Amended Complaint's allegations.**

Plaintiff's first objection is, in reality, a four-part series of general, omnibus objections to Magistrate Judge Strauss's characterization of the allegations in the Second Amended Complaint. ECF 74 at 3. To the extent that Plaintiff's first objection is even preserved, *see Schultz*, 565 F.3d at 1361 (forbidding general objections), it lacks merit at each step.

2

*First*, Plaintiff contends that Magistrate Judge Strauss incorrectly determined that Plaintiff failed to "allege what specific content was created by Fenix." ECF 74 at 3. In support of her argument, Plaintiff parrots the Second Amended Complaint's allegations that Fenix created "content and webpage posts which linked view[ers] to the content creators' profile and videos, as well as added new captions, new video and content summaries, new animations, and/or new video thumbnails." ECF 74 at 3–4. But Plaintiff's recitation of her general allegations simply proves Magistrate Judge Strauss to be correct. Generally alleging that Fenix created "content summaries" and "animations" by definition does not amount to an allegation about those supposed summaries' and animations' "specific content" and lacks the substance required by Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("naked assertions devoid of factual enhancement" do not satisfy Rule 8's pleading standard).

Next, Plaintiff inaccurately asserts that Magistrate Judge Strauss "overlook[ed]" allegations that Fenix created posts and advertised Romelus's profile. ECF 74 at 4 (citing ECF 63 ¶¶ 30, 35). But he did not. Magistrate Judge Strauss quoted, cited, and considered those very allegations before rightly concluding that, even if the allegations were true, they do not show that Fenix became a content provider under 47 U.S.C. § 230(f)(3). *See, e.g.*, ECF 73 at 8–9 (quoting ¶ 35 as alleging that Fenix advertised Romelus's profile).

Regardless, Plaintiff's insistence that she alleged "that Fenix created content" misses the mark. ECF 74 at 4. As Magistrate Judge Strauss explained in depth, the relevant test is not whether an ICS defendant "created content" in the abstract, but whether content it created materially contributed to the alleged illegality of content uploaded by third parties. *See* ECF 73 at 7 15.

Plaintiff also erroneously faults Magistrate Judge Strauss for "overlook[ing] the fact that the Plaintiff has been unable to take ANY discovery in this case to date and thus has not been able

3

to obtain specific factual evidence beyond that which is alleged in the Complaint." ECF 74 at 4. But Magistrate Judge Strauss implemented rather than overlooked the familiar rule that "the 'purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists.'" *Clearwater Consulting Concepts, LLP v. Imperial Premium Fin., LLC*, 2010 WL 916392, at *1 (S.D. Fla. Mar. 11, 2010).[1]

*Second*, Plaintiff insists that Magistrate Judge Strauss incorrectly determined that she did not allege "that Fenix required Romelus or other content creators to post specific content" because the Second Amended Complaint alleges that Fenix required creators to upload a biography, avatar, cover image, and hyperlinks to other social media accounts. ECF 74 at 4–5. Again, to recite that argument is to disprove it. The Second Amended Complaint alleges that Fenix required Romelus to upload a biography, an avatar, a cover image, and hyperlinks—not that it directed Romelus to upload any particular kind of biography, avatar, cover image, or linked content. ECF 63 ¶ 32. And contrary to Plaintiff's assertion, ECF 74 at 5, the fact that Romelus chose to link users to his own off-site content that allegedly endorsed exploitation of women only underscores that *Fenix* did not require him to do so, *see* ECF 73 at 12.

*Third*, Plaintiff contends that Magistrate Judge Strauss wrongly concluded that Fenix's alleged verification of Romelus's profile does not support an inference that Fenix materially contributed to creating the unlawful video. ECF 74 at 5. Not so. The relevant question is whether Fenix "pointedly solicited such content, essentially compelling users to engage in illegal conduct

---

[1] Plaintiff's suggestion that she cannot improve her allegations, ECF 74 at 4, does not excuse her from meeting her burden under federal pleading requirements and is also a sufficient basis to deny her pending request for leave to file another amended complaint, ECF 75. *See United States ex rel. Shurick v. Boeing Co.*, 330 F. App'x 781, 784 (11th Cir. 2009) ("A plaintiff 'should not be allowed to amend his complaint without showing how the complaint could be amended to save the meritless claim.'" (alteration adopted)).

as a condition to using the platform." *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1364 (S.D. Fla. 2022). Magistrate Judge Strauss correctly determined that "the fact that Fenix verified Romelus' identity has no bearing" on that question. ECF 73 at 12. While Plaintiff insists that the verification of Romelus's profile lent "credibility" to it, ECF 74 at 5, that contention (even if assumed true) does not support a reasonable inference that Fenix "*compell[ed]* users to engage in illegal conduct," *L.H.*, 604 F. Supp. 3d at 1364 (emphasis added).

Plaintiff again asserts that the Second Amended Complaint's allegations that Fenix advertised Romelus's profile by "creating webpage posts and adding new captions, video and content summaries, new animations, and/or new video thumbnails" amounts to a material contribution to the creation of unlawful content. ECF 74 at 5. But that generic allegation cannot support an inference that Fenix forced or induced Romelus to upload any particular kind of content, let alone illegal content. The same is true of Plaintiff's (false) suggestion that Fenix financially benefitted from subscription fees associated with Romelus's video. *See Couture v. Noshirvan*, 2023 WL 8280955, at *2 (M.D. Fla. Nov. 30, 2023) (allegations that ICS "makes money from [a creator's] videos" does not "show that [the ICS] 'contributed materially to the alleged illegality' of the videos" (alteration adopted)); *see also Doe v. WebGroup Czech Republic, a.s.*, 2024 WL 3533426, at *7 (C.D. Cal. July 24, 2024) (explaining that "revenue-sharing—so long as the methods by which revenue sharing is conducted are neutral with respect to the content—is … an insufficient basis for liability").

*Fourth*, Plaintiff incorrectly asserts that her general allegations that Fenix "anonymiz[ed] web traffic and utiliz[ed] a paywall" make Fenix a content provider. ECF 74 at 6. As Magistrate Judge Strauss correctly recognized, such allegations "do nothing to show how Fenix encouraged the posting of illegal content." ECF 73 at 14. In case after case, other courts have reached the

5

same conclusion. *See, e.g.*, *Est. of Bride ex rel. Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1181 (9th Cir. 2024) (claim based "on the design feature of anonymity" did not overcome Section 230(c) protection); *WebGroup*, 2024 WL 3533426, at *8 (plaintiff's allegations that defendants anonymized web traffic was not "a sign that Defendants materially contributed to the unlawful content posted to its websites"); *L.H.*, 604 F. Supp. 3d at 1364–65 (defendant was not content provider just because platform "allows for confidential communications between buyers and sellers, along with the exchange of sexually explicit photographs" because such "allegations merely describe a system that *allowed* the illegal posts" (emphasis in original)). Like Magistrate Judge Strauss's Report and Recommendation, those decisions are correct. "[A]nonymizing web traffic" does not amount to compelling or encouraging the post of unlawful content. The alleged anonymization of user identities is at most a content-neutral policy. *See, e.g.*, *Est. of Bride*, 112 F.4th at 1181. And neutral tools do not transform an ICS into a content provider, even if those tools do not affirmatively prevent misuse of the ICS platform. *See, e.g.*, *id.*; *L.H.*, 604 F. Supp. 3d at 1364.

Plaintiff relatedly argues that Magistrate Judge Strauss "overlook[ed] the allegation that Fenix encouraged the *posting* of the video by not requiring Romelus to upload a third-party release," but this argument mischaracterizes the Second Amended Complaint's allegations. ECF 74 at 6. Plaintiff suggests, in her objections, that Fenix "waiv[ed]" the alleged "requirement" to upload a third-party release form as to Romelus. *Id.* But the Second Amended Complaint only (falsely) alleges that Fenix "did not require that *content creators* upload a third-party release form at *any* time." ECF 63 ¶ 21 (emphases added). Alleging that Fenix *generally* does not enforce a third-party release policy in practice is not the same as alleging that Fenix consciously "waiv[ed]"

6

the alleged policy in a particular case.² Either way, Plaintiff's third-party release theory suggests at the very most a "lack of diligence in preventing trafficking," which is not enough to state a claim. *L.H.*, 604 F. Supp. 3d at 1365; *accord Force v. Facebook, Inc.*, 934 F.3d 53, 71 (2d Cir. 2019) ("[O]ne of the purposes of Section 230 was to ensure that interactive computer services should not incur liability as developers or creators of third-party content merely because they undertake such efforts [to eliminate objectionable content]—even if they are not completely effective.").

In short, Magistrate Judge Strauss applied the correct pleading standard, thoroughly evaluated Plaintiff's allegations, and correctly concluded that those allegations failed to overcome § 230(c)(1). Plaintiff's first objection should be overruled.

**II.    Response to Objection 2**: Magistrate Judge Strauss correctly concluded that Plaintiff failed to plausibly allege that Fenix qualifies as an "information content provider" under 47 U.S.C. § 230(f)(3) and, therefore, correctly determined that the CDA bars this suit.

Plaintiff's second objection is largely repetition of, and is equally as meritless as, her first objection. To start with, Plaintiff objects to Magistrate Judge Strauss's determination that Fenix is not a content provider because Plaintiff alleges that Fenix made only "neutral tools" available to creators. ECF 74 at 7. In particular, she contends that Magistrate Judge Strauss "overlooked the allegation" that Fenix's alleged "policy requiring all content creators to upload third-party release forms" "was not neutrally implemented" because, according to Plaintiff, "Fenix did not require Romelus to provide a third-party release form on behalf of Plaintiff." *Id.* at 7–8.

But that is not what the Second Amended Complaint alleged. As explained above, the Second Amended Complaint alleged that Fenix "did not require that *content creators* upload a

---

² Because Plaintiff never presented this argument to Magistrate Judge Strauss, the Court may exercise its discretion not to consider the argument. *See Williams*, 557 F.3d at 1292.

7

third party release form at *any* time." ECF 63 ¶ 21 (emphases added). To the extent that Plaintiff alleges that Fenix had a neutral policy of requiring third-party release forms, she also alleges that Fenix neutrally ignored that same policy as to other "content creators," not just as to Romelus and not just upon upload of the alleged video here.[3] *Id.*

In any event, an ICS's alleged failure to take the preventative step of filtering out third-party content before it was posted is a heartland example of the type of claim that § 230(c)(1) bars. *See, e.g.*, *McCall v. Zotos*, 2023 WL 3946827, at *3 (11th Cir. June 12, 2023) ("Lawsuits seeking to hold a service provider … liable for … deciding whether to publish, withdraw, postpone, or alter content[ ]are barred."); *L.H.*, 604 F. Supp. 3d at 1365 ("[F]ailure to prevent or remove the postings is precisely the type of conduct Congress sought to immunize: seeking to hold [an ICS] liable for that failure is no different than attempting to treat [it] as the publisher of the information in the postings, provided by the traffickers themselves."); *see also* ECF 73 at 13 (collecting cases).[4] Magistrate Judge Strauss correctly concluded that Plaintiff's third-party release allegations do not make Fenix a content provider.

Next, taking issue with Magistrate Judge Strauss's discussion of *Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136 (N.D. Ala. 2022), Plaintiff insists that *MG Freesites* is instructive here. ECF 74 at 8–9. To the contrary, *MG Freesites* only underscores the allegations that the Second Amended Complaint lacks. The complaint in *MG Freesites* alleged that the defendant *specifically*

---

[3] Although the correctness of Plaintiff's allegations (which must be assumed true at the pleading stage) are not at issue, Plaintiff's suggestion that Fenix ignores its policy of requiring third-party release forms has no basis in fact and is denied.

[4] While Plaintiff objects to Judge Strauss's invocation of the Eleventh Circuit's decision in *McCall v. Zotos*, she predicates her proposed distinction between this case and *McCall* on her mischaracterization of the Second Amended Complaint's allegation about third-party release forms. (*See* ECF 74 at 8.) As explained, Plaintiff's argument is unpersuasive even accepting that mischaracterization, because "fail[ing] to prevent or remove … postings is precisely the type of conduct Congress sought to immunize." *L.H.*, 604 F. Supp. 3d at 1365.

solicited and calibrated its features to encourage the posting of child pornography. It did so by, among other things, creating tags and keywords like "teen," "abused teen," and "middle school girls" to facilitate searches for child pornography; employing "coded language" for child pornography "to ensure that such content is visible to users who search for it"; and providing "extensive instructions to uploaders including the type of content viewers wish to see and the sex acts to take place." 676 F. Supp. 3d at 1162; *see also* ECF 73 at 15 n.7 (outlining the "much more specific allegations of the defendants materially contributing to the illegal content themselves" in *MG Freesites*). Those allegations of express calls for illegal content bear no resemblance to Plaintiff's allegations here. While Plaintiff insists otherwise, she tellingly compares the allegations of the *ICS's* solicitation of unlawful content in *MG Freesites* to her allegation that *Romelus* posted content about exploiting women on *other* platforms—not on OnlyFans. *See* ECF 74 at 8–9.

Magistrate Judge Strauss correctly concluded that Plaintiff is not an "information content provider" under 47 U.S.C. § 230(f)(3). Plaintiff's second objection thus fails and should be overruled.

### III. Response to Objection 3: Magistrate Judge Strauss correctly concluded that no FOSTA exception applies.

Plaintiff also objects to Magistrate Judge Strauss's conclusion that no exception to § 230(c)(1) applies to her claim under FOSTA. ECF 74 at 9. Section 230(e)(5)(A) furnishes the only exception that Plaintiff argues should apply. The statute provides that "[n]othing in this section … shall be construed to impair or limit … any claim in a civil action brought under section 1595 of title 18, *if the conduct underlying the claim constitutes a violation of section 1591 of that title*." 47 U.S.C. § 230(e)(5)(A) (emphasis added).

Section 1591 of title 18, in turn, is a criminal statute. It imposes criminal penalties on:

Whoever *knowingly*

9

> (1) in or affecting interstate or foreign commerce … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> *knowing*, …, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act ….

18 U.S.C. § 1591(a) (emphases added). Section 1591 elsewhere defines "[t]he term 'participation in a venture'" as "*knowingly* assisting, supporting, or facilitating a violation of subsection (a)(1). *Id.* § 1591(e)(4).

The plain statutory text speaks for itself: for the § 230(e)(5)(A) exception to apply, the plaintiff must allege the defendant's *actual knowledge* of the criminal conduct prohibited by § 1591(a)—including that the defendant must know *in advance* that improper means to coerce a commercial sex act "will be used." *Id.* § 1591(a). That is why every court that has reached the question (or least every court that has not since been overruled by a higher court) has concluded that § 230(e)(5)(A) applies only if the plaintiff alleges the defendant's actual knowledge of a § 1591(a) violation. *See Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1304 n.6 (D.C. Cir. 2023) ("[A]ll courts to have decided the issue thus far are now in alignment."); *see also, e.g.*, *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1250–51 (S.D. Fla. 2020).

Plaintiff objects to Magistrate Judge Strauss's reading of § 230(e)(5)(A), but in doing so offers no viable alternative to this straightforward and universal reading of § 230(e)(5)(A). She argues that § 230(e)(5)(A) requires alleging only constructive, rather than actual knowledge, of a § 1591(a) violation. To support that reading, she offers arguments fitting into several categories, none of which work.

*First*, Plaintiff cites a string of cases without attempting to explain their relevance.  *See* ECF 74 at 9.  Although Plaintiff nowhere mentions this fact, the principal decision she cites, *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021), was later overruled by the Ninth Circuit for adopting precisely the reading of § 230(e)(A)(5) that Plaintiff proposes here.  *See Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1141, 1145–46 (9th Cir. 2022).  In the appeal of that decision, the Ninth Circuit thoroughly analyzed the text of § 230(e)(A)(5) and § 1591(a), and ultimately held that § 230(e)(A)(5)'s exception applies only if the plaintiff alleges the defendant's *actual* knowledge.  *Id.*  And the remaining district court decisions on which Plaintiff relies did not interpret the relevant provision, § 230(e)(5)(A), at all.[5]  *See* ECF 74 at 9.  Those cases involved claims against non-websites—meaning that § 230(c)(1) immunity was not at issue and, naturally, that FOSTA exceptions to such immunity did not come into play.

*Second*, contrary to Plaintiff's argument that Eleventh Circuit has not weighed in on the question, ECF 74 at 10, it has.  In *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), the Eleventh Circuit held—in a case against *non-website* hotel franchisors—that constructive knowledge is the relevant scienter requirement for a TVPRA beneficiary claim under § 1595(a).  *Id.* at 724.  In doing so, the Eleventh Circuit also made clear that "Section 1591(a) includes a scienter requirement that does not appear in Section 1595(a)—a defendant must *know* 'that means of force, threats of force, fraud, coercion . . ., or any combination of such means will be used to cause the person to engage in a commercial sex act.'"  *Id.* (emphasis in original).  Nonetheless, Plaintiff asserts that the Court should read into § 1591(a) the very constructive knowledge standard

---

[5] *E.g.*, *Doe #1 v. Crowley Mar. Corp.*, 2024 WL 1346947, at *11-12 (M.D. Fla. Mar. 29, 2024); *T.E. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 474400, at *4 (S.D. Ohio Feb. 7, 2024); *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1234 (N.D. Ga. 2022).

11

that the Eleventh Circuit explained appears only in § 1595(a).[6] *Id.*; *see* ECF 74 at 9; ECF 73 at 19. The Court should reject Plaintiff's invitation to ignore the plain import of binding law.

*Third*, Plaintiff asserts without elaboration that the TVPRA is a remedial statute that should be liberally construed. ECF 74 at 10. That argument unravels in several directions. To begin, Plaintiff offers no way to reconcile liberal construction of the TVPRA with the even more well-settled principle that *the CDA* "should be construed broadly in favor of immunity." *Force*, 934 F.3d at 64. And even more fundamentally, Plaintiff "does not explain how a liberal rather than a fair interpretation of the [TVPRA] has any bearing on the issues in this case." *Hernandez v. Plastipak Packaging, Inc.*, 15 F.4th 1321, 1330 (11th Cir. 2021). After all, even "a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). The TVPRA's text and context provides just such a limit here. As essentially every other court to address the issue has held, the statutory text plainly identifies the relevant scienter requirement—actual knowledge—whether liberally or just fairly construed.

After objecting to Magistrate Judge Strauss's conclusion that § 230(e)(5)(A) requires alleging actual knowledge, Plaintiff argues that her allegations support an inference that Fenix actually knew that Romelus would upload an alleged filmed sexual assault. ECF 74 at 10. According to Plaintiff, a reasonable jury could "infer" that Fenix actually knew that Romelus would upload a filmed alleged assault onto OnlyFans because his other social media accounts contained references to "drunk girls," "stupid college students," and "freaky girls." *Id.* Plaintiff's

---

[6] In insisting otherwise, Plaintiff cites yet another case that is no longer good law—this time, a district court decision that the Ninth Circuit reversed for adopting the interpretation Plaintiff advocates. (*See* ECF 74 at 10 (citing *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 920 (N.D. Cal. 2021), *rev'd in relevant part*, 2023 WL 3220912, at *1 (9th Cir. May 3, 2023)).) Plaintiff nowhere mentions that case's subsequent history. *Id.*

12

argument blurs beyond recognition the distinction between actual and constructive knowledge. As Magistrate Judge Strauss rightly concluded, Plaintiff's allegations suggest at most that Fenix "perhaps should have known that Romelus engages in lewd, tasteless, creepy, and potentially misogynistic behavior," not that Romelus did or would assault someone. ECF 73 at 22.

Plaintiff has provided the Court no justifiable reason to adopt an interpretation of § 230(e)(5)(A) and § 1591(a) that virtually every court before now has rejected. Because Magistrate Judge Strauss correctly determined that Plaintiff has not plausibly alleged that a FOSTA exception applies, Plaintiff's third objection should be overruled.

## CONCLUSION

The Court should overrule Plaintiff's objections to Magistrate Judge Strauss's Report and Recommendation, adopt the Report and Recommendation in full, and dismiss the Second Amended Complaint as against Fenix without leave to amend.

DATED: November 29, 2024    Respectfully submitted,

              QUINN EMANUEL URQUHART & SULLIVAN LLP

             By  /s/ *John F. O'Sullivan*
              John F. O'Sullivan (Fla. Bar No. 143154)
              Jason D. Sternberg (Fla. Bar No. 72887)
              2601 South Bayshore Drive, Suite 1550
              Miami, Florida 33133
              johnosullivan@quinnemanuel.com
              jasonsternberg@quinnemanuel.com
              Secondary: olgagarcia@quinnemanuel.com
              (305) 439-5008

              *Counsel for Defendant Fenix International Limited*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this 29th of November, 2024, a true and correct copy of the foregoing document was electronically transmitted to all counsel of record via the CM/ECF system.

             By:  /s/ *John F. O'Sullivan*
              John F. O'Sullivan
              Florida Bar No. 143154
              johnosullivan@quinnemanuel.com