UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-62176-ALTMAN/Strauss

**JANE DOE**,

     *Plaintiff,*

*v.*

**FENIX INTERNATIONAL, LTD.**, *et al.*,

     *Defendants.*

_____/

## ORDER

The facts of this case are harrowing. Our Plaintiff, Jane Doe, alleges that the Defendants, Michelson Romelus and Bendjy Charles, "filmed each other on video while they forcibly raped and sodomized [her]." Second Amended Complaint ("SAC") [ECF No. 63] ¶ 14. This would have been horrible enough, but the indignity was compounded weeks later when Romelus "edited and uploaded the video footage of Plaintiff's rape . . . to OnlyFans[.com] and began to sell the footage on OnlyFans as part of a monthly subscription package." *Id.* ¶ 18. The Plaintiff has brought a variety of state-law tort claims against Romelus and Charles *and* accuses our third Defendant—Fenix International, Ltd., the owner of OnlyFans—of violating the Trafficking Victims Protection Act "by knowingly facilitating an environment for illegal content publishing, such as the video of Plaintiff's rape, and engaging in profit-sharing with Defendant Michelson Romelus by aiding in the sale of the video and verifying Defendant Michelson Romelus' OnlyFans account to aid in the distribution of the material." *Id.* ¶ 30.

Fenix moved to dismiss the SAC on August 2, 2024. *See* Motion to Dismiss ("MTD") [ECF No. 65].[1] In the MTD, Fenix argues that it is "immune from liability under Section 230 of the Communications Decency Act ('CDA'), 47 U.S.C. § 230(c)(1)." *Id.* at 8. We referred the MTD to U.S. Magistrate Judge Jared M. Strauss, *see* Order of Referral [ECF No. 72], who agreed "that Fenix is immune under the CDA" and recommended that we dismiss the Plaintiff's claims against Fenix, *see* Report and Recommendation ("R&R") [ECF No. 73] at 23. Magistrate Judge Strauss also cautioned the parties as follows:

> The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Roy K. Altman, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

*Id.* at 23–24.

The Plaintiff timely objected to the R&R, *see* Plaintiff's Objections to Magistrate Judge's Report and Recommendation ("Objections") [ECF No. 73], and Fenix has responded to those Objections, *see* Fenix's Responses to Plaintiff's Objections ("Objections Response") [ECF No. 77]. In addition to filing her Objections, the Plaintiff has moved to file a third amended complaint—which will purportedly "cure the deficiencies outlined [in the R&R]." Motion for Leave to Amend Complaint ("Motion to Amend") [ECF No. 75] at 1.[2] After careful review, we **OVERRULE** the Plaintiff's Objections, **ADOPT** Magistrate Judge Strauss's R&R, **DENY** the Plaintiff's Motion to Amend, and

---

[1] Charles, through counsel, answered the SAC. *See* Charles's Answer [ECF No. 64]. Romelus has never appeared in this action and has had a clerk's default entered against him. *See* Clerk's Default as to Romelus [ECF No. 44].

[2] The Motion to Amend has been fully briefed. *See* Fenix's Opposition to Motion for Leave to File Third Amended Complaint ("Motion to Amend Response") [ECF No. 78]; Plaintiff's Reply to Defendant Fenix's Opposition to Motion for Leave to File Third Amended Complaint ("Motion to Amend Reply") [ECF No. 79].

**DISMISS** the Plaintiff's claim against Fenix. And, since all of the Plaintiff's remaining claims against Romelus and Charles arise from state tort law, we **REMAND** the rest of this case back to the Seventeenth Judicial Circuit Court in and for Broward County, Florida.

## THE LAW

District courts must review *de novo* any part of a magistrate judge's disposition that has been properly objected to. *See* FED. R. CIV. P. 72(b)(3). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require a *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). "If no objection or only [a] partial objection is made to the magistrate judge's report, the district judge reviews those unobjected portions for clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (cleaned up)).

When a party timely objects to a magistrate judge's report and recommendation, the district judge must make a *de novo* determination "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Leonard v. Polk Cnty. Sheriff's Dep't*, 2019 WL 11641375, at *1 (M.D. Fla. Apr. 16, 2019) (Jung, J.). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020) (Lenard, J.) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). The "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citation omitted).

3

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

## ANALYSIS

### I.   Magistrate Judge Strauss's R&R

#### A. The Parties' Arguments

In Count I of the SAC, the Plaintiff contends that Romelus and Charles violated 18 U.S.C. § 1591 "by causing Plaintiff to engage in a commercial sex act by forcibly raping and sodomizing her . . . and then publishing the video footage on OnlyFans for a commercial profit." SAC ¶ 28. And, the Plaintiff adds, Fenix is liable under § 1595(a) because it "benefitted from the sale of the Plaintiff's rape video . . . and encourag[ed] the creation of such content by not putting forth any safeguards to prevent this content from being sold on their website[.]" *Id.* ¶ 36.

4

Fenix responds that it's immune from suit under the CDA, which (Fenix says) "immunizes interactive computer service providers . . . from claims (like Count I) that seek to hold them liable for content published on their platforms by a third party[.]" MTD at 11. Fenix qualifies as an "interactive computer service"—as opposed to a non-covered "information content provider"—because OnlyFans "does not create or develop content simply by providing tools that make user-created content available and usable to others." *Id.* at 13 (cleaned up). Fenix also argues that the "narrow exception" to Section 230—carved out by the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA")—doesn't apply here. *See id.* at 15; *see also* 47 U.S.C. § 230(e)(5)(A) ("Nothing in this section shall be construed to impair or limit any claim brought under section 1595 of title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title[.]" (cleaned up)). According to Fenix, the FOSTA exception is irrelevant because the Plaintiff "never alleges that Fenix actually knew that [Romelus and Charles] would attack her or knew that they would upload a video of the attack." MTD at 16.[3]

On this dispute, Magistrate Judge Strauss sided with Fenix. Magistrate Judge Strauss found that Fenix was an "interactive computer service"—*not* an "information content provider." R&R at 5. Magistrate Judge Strauss also concluded that the Plaintiff "[did] not allege what specific content Fenix created" and instead predicated her claim "on content created by the other defendants[.]" *Id.* at 10. Since the Plaintiff failed to allege "more than the mere possibility that Fenix was responsible for the creation or development of the allegedly illegal content at issue," *id.* at 15 (cleaned up), Magistrate Judge Strauss held that Fenix wasn't an "information content provider"—and, therefore, that it was

---

[3] Fenix advances other arguments in its MTD—*e.g.*, that the Plaintiff "has not credibly alleged that Fenix participated in a sex trafficking venture," MTD at 18, and that we lack personal jurisdiction over Fenix because "it did not engage in a 'tortious act within this state' under Florida's long-arm statute," *id.* at 20 (quoting FLA. STAT. § 48.193(1)(a)(2)). We won't reach these issues because—like Magistrate Judge Strauss—we find that Fenix "should be dismissed from this action on immunity grounds[.]" R&R at 3 n.1.

entitled to Section 230 immunity. Finally, Magistrate Judge Strauss agreed with Fenix that "FOSTA's immunity exception" didn't apply because the Plaintiff "failed to plausibly allege actual knowledge." *Id.* at 16. In reaching this conclusion, the Magistrate Judge expressly rejected the Plaintiff's counterargument that "constructive knowledge must be sufficient under both §§ 1591 and 1595[.]" *Id.* at 20.

The Plaintiff now advances three objections to Magistrate Judge Strauss's R&R. *First*, the Plaintiff says that Magistrate Judge Strauss applied a "heightened standard of review beyond the requirements of FED. R. CIV. P. 8(a)" and failed to recognize that she "allege[d] specific details and allegations" about Fenix's role in creating content. Objections at 2–3. *Second*, the Plaintiff insists that the Magistrate Judge "overlooked" the fact that "Fenix was responsible, in whole or in part, for information provided on OnlyFans.com and Romelus' profile"—and, therefore, that the Magistrate Judge incorrectly determined that Fenix "is not an information content provider[.]" *Id.* at 7. *Third*, the Plaintiff contends "that FOSTA does not require Fenix to have actual knowledge of the trafficking" and that Magistrate Judge Strauss was simply wrong to suggest that it does. *Id.* at 10. We'll consider (and overrule) all three objections.

### B.  Fenix is Immune Under Section 230

The Plaintiff's first and second objections concern Magistrate Judge Strauss's finding that Fenix is entitled to immunity under Section 230 because "the allegations Plaintiff emphasizes do not plausibly establish that Fenix materially contributed to the illegality of the content." R&R at 9. Under Section 230, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).[4] By enacting Section 230, Congress has "establish[ed] broad 'federal immunity to any cause

---

[4] The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2). The Plaintiff doesn't dispute that Fenix provides an "interactive computer

of action that would make service providers liable for information originating with a third-party user of the service." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). Conversely, "content providers cannot use Section 230 immunity to escape liability for the unlawfulness of the content they create." *Doe #1 v. MG Freesites, Ltd.*, 676 F. Supp. 3d 1136, 1159 (N.D. Ala. 2022) (Coogler, J.) (citing *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)). So, to "evaluat[e] a defendant's entitlement to protection under § 230(c)(1), courts look to whether three elements are met: (1) the defendant is a provider of an interactive computer service, (2) the claim is based on information provided by another information content provider, and (3) the claim would treat the defendant as the publisher or speaker of that information." *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1363–64 (S.D. Fla. 2022) (Scola, J.); *accord La Liberte v. Reid*, 966 F.3d 79, 89 (2d Cir. 2020).

Magistrate Judge Strauss's R&R focused almost exclusively on the second element of this three-element test (*i.e.*, whether Fenix acted as an "information content provider"). The CDA, Magistrate Judge Strauss began, defines an "information content provider" as "one who is wholly or partly responsible for the creation or development of the content at issue." R&R at 5 (citing 47 U.S.C. § 230(f)(3)). Citing cases from multiple federal circuit courts, Magistrate Judge Strauss outlined the prevailing "material contribution" test, which provides that "a website operator '[will be] responsible for the development of the information at issue in the case if they directly and materially contributed to what made the content itself unlawful.'" *Id.* at 6 (quoting *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 127 (4th Cir. 2022)). On the other hand, websites "do not create or develop content when they 'merely provide a neutral means by which third parties can post information of their own independent choosing online.'" *Id.* at 7 (quoting *Rigsby v. GoDaddy, Inc.*, 59 F.4th 998, 1008 (9th Cir.

---

service." R&R at 5 ("Plaintiff does not dispute that Fenix is an interactive computer service[.]"); *see also generally* Objections.

2023)). Reviewing the Plaintiff's SAC, Magistrate Judge Strauss noted that the Plaintiff offered seven allegations in her effort to satisfy this "material-contribution test." *See id.* at 8–9 (quoting Response to Motion to Dismiss [ECF No. 68] at 11).[5] After considering each of the seven allegations (both individually and in tandem), *see generally id.* at 9–15, Magistrate Judge Strauss concluded that "[the] Plaintiff's well-pled allegations allow us to infer no more than the mere possibility that Fenix was responsible for the creation or development of the allegedly illegal content at issue," *id.* at 15. Magistrate Judge Strauss thus found "that Plaintiff's allegations fall well short of what is needed to overcome CDA immunity," *id.* at 9.

The Plaintiff has lodged two objections to this finding. The first objection challenges Magistrate Judge Strauss's "determin[ation] that the [SAC] failed to allege specific details and allegations regarding: 1) the content created by Fenix; 2) the content Fenix required Romelus to post; 3) how that content played a role in contributing or enhancing the illegality of Romelus' conduct; and 4) how Fenix aided in the sale of the video by anonymizing web traffic." Objections at 3. In her second objection, the Plaintiff says "the Magistrate Judge overlooked the allegation" that Fenix's "blanket policy requiring all content creators to upload third-party release forms" was not "neutrally implemented." *Id.* at 7. In saying so, the Plaintiff contends that Magistrate Judge Strauss *both* improperly relied on *McCall v. Zotos*, 2023 WL 3946827 (11th Cir. June 12, 2023), *and* incorrectly

---

[5] Those seven allegations are that Fenix: (1) "required Romelus to include social media hyperlinks in his profile, which in turn focused on sexually exploiting 'drunk girls,' 'stupid college girls,' 'freaky girls,' and so forth"; (2) "displayed a check mark next to Romelus' name showing that he was 'verified' and creating the impression he should be trusted"; (3) "created its own content and webpage posts, which linked viewers to Romelus' profile and videos and which added new captions, new video and content summaries, new animations and/or new video thumbnails"; (4) "failed to enact or enforce any safeguards to remove trafficked material from the website"; (5) "anonymized web traffic and utilized a paywall in order to make it easier for content creators to sell illegal material on the website"; (6) "failed to enforce its alleged corporate policy requiring a signed release form showing consent by any third party (like Plaintiff) who appears in a posted video"; and (7) "took a 20% share of the profits from all of Romelus' videos." R&R at 8–9; *see also* SAC ¶¶ 20–21, 29–30, 32–35 (setting forth the allegations).

distinguished *Doe #1 v. MG Freesites, Ltd.*, 676 F. Supp. 3d 1136 (N.D. Ala. 2022). *See id.* at 8. In the interest of completeness, we'll analyze each of the five arguments the Plaintiff made across her two objections separately.

*First*, Magistrate Judge Strauss properly found that the Plaintiff "does not allege what specific content Fenix created." R&R at 10. The Plaintiff says that the Magistrate Judge overlooked paragraph 35 of its SAC, which avers that Fenix "advertised all the profiles and/or webpages of its content creators, including [Romelus]," by "creat[ing] content, including advertisements, webpage posts, captions, summaries, and animations." Objections at 4 (quoting SAC ¶ 35). But Magistrate Judge Strauss *expressly considered* this portion of the SAC, *see* R&R at 9 (quoting SAC ¶ 35), and found these allegations insufficient under Rule 8 because they amounted to "naked assertions devoid of further factual enhancement," *id.* at 10 (quoting *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1269 (11th Cir. 2023)). Magistrate Judge Strauss correctly found that the SAC failed to specify which "summaries, animations, or thumbnails that Fenix created are at issue here," or "how any summaries, animations, or thumbnails Fenix created played any role in contributing (materially or otherwise) to what made the content posted by Romelus (the content that is at issue here) unlawful." *Ibid.* (first citing *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019); and then citing *Force v. Facebook*, 934 F.3d 53, 68 (2d Cir. 2019)). And the Plaintiff has done nothing in her objections to answer Magistrate Judge Strauss's questions or to fill in these gaps in her pleading. In other words, the Magistrate Judge was right to say that these allegations—standing alone—amount to "naked assertions devoid of further factual enhancement" that do not satisfy federal pleading standards. *Iqbal*, 556 U.S. at 678.[6]

---

[6] In response to this, the Plaintiff says her allegations *can't* be more specific because she "has been unable to take ANY discovery in this case[.]" Objections at 4. We agree with Fenix, however, that this entire argument is backwards: "[A] pleading that does not satisfy Rule 8(a)(2)'s pleading requirement cannot be the basis for discovery . . . because, by definition, such a pleading fails to state a claim upon which relief can be granted." *Grigorian v. Tixe Realty Servs., Inc.*, 2019 WL 6122662, at *3 (S.D. Fla. Nov. 18, 2019) (Reinhart, Mag. J.); *see also Clearwater Consulting Concepts, LLP v. Imperial Premium Fin., LLC*, 2010 WL 916392, at *1 (S.D. Fla. Mar. 11, 2010) (Marra, J.) ("However, a pleading is insufficient if a

*Second*, the Plaintiff is just wrong to say that the SAC "sufficiently pleads under Rule 8(a) that Fenix required Romelus and other content creators to post specific content." Objections at 5. The SAC indeed alleges that Fenix required Romelus (and all OnlyFans content creators) "to upload a biography, avatar photo, and cover photo to his/her profile" and "to provide [Fenix] with a hyperlink to the content creators' Instagram profile, Twitter profile, and a third social media profile of the content creators' choice." SAC ¶¶ 32–33. Because Fenix "required" Romelus to display this content, the Plaintiff posits, Romelus was able to further "promote[ ] the exploitation of women on OnlyFans.com" by posting a hyperlink to his "alternative social media accounts," which emphasized this depraved conduct. Objections at 5 (citing SAC ¶ 34). As Magistrate Judge Strauss correctly explained, however, Fenix didn't require "Romelus or other content creators to post *specific* content." R&R at 12 (emphasis added). The Plaintiff never suggests that Fenix *required* or even *incentivized* Romelus or other OnlyFans users to post content that (for instance) "promote[s] the exploitation of women[.]" Objections at 5; *see also* Objections Response at 7 ("The [SAC] alleges that Fenix required Romelus to upload a biography, an avatar, a cover image, and hyperlinks—not that it directed Romelus to upload any particular kind of biography, avatar, cover image, or linked content.").

The Plaintiff's objection also ignores the many cases Magistrate Judge Strauss cited in his R&R—all of which hold that a website like OnlyFans doesn't "create or develop content" if it "merely provide[s] a neutral means by which third parties can post information of their own independent choosing online." R&R at 7 (quoting *Rigsby*, 59 F.4th at 1008); *see also, e.g.*, *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 745 (9th Cir. 2024) ("[A]n internet company providing tools that can be manipulated by third parties for unlawful purposes does not always defeat § 230(c)(1) immunity. Rather, providing neutral tools as to the alleged unlawfulness does not amount to development. For example, simply

---

defendant does not know the basic facts that constitute the claim for relief against it. Such detail should not be left to discovery, for the purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists." (cleaned up)).

because a dating website required users to provide their 'sex, race, religion and marital status,' § 230(c)(1) immunity exists even if the company were sued for libel based on those characteristics." (cleaned up) (quoting *Roommates.com*, 521 F.3d at 1169)); *Dyroff*, 934 F.3d at 1099 ("Plaintiff cannot and does not plead that Ultimate Software required users to post specific content, made suggestions regarding the content of potential user posts, or contributed to making unlawful or objectionable user posts. Ultimate Software is entitled to immunity under the plain terms of Section 230 and our case law as a publisher of third-party content."); *Jones v. Dirty World Ent. Recordings, LLC*, 755 F.3d 398, 416 (6th Cir. 2014) ("[T]he website that Richie operated did not require users to post illegal or actionable content as a condition of use. . . . The website's content submission form simply instructs users to 'tell us what's happening. Remember to tell us who, what, when, where, why.' . . . These tools, neutral (both in orientation and design) as to what third parties submit, do not constitute a material contribution to any defamatory speech that is uploaded.").

   *Third*, Magistrate Judge Strauss was right to observe that the Plaintiff "failed to include any allegations to show how any content Fenix created or developed enhanced the illegality of the content provided by Romelus." R&R at 11. The Plaintiff claims that the SAC sufficiently: (1) "allege[d] that Fenix added credibility to Romelus'[s] profile and content by verifying and adding a check mark next to Romelus'[s] account"; and (2) "allege[d] that Fenix advertised and promoted Romelus' profile and videos, including the video depicting Plaintiff's rape, through creating webpage posts and adding new captions, video and content summaries, new animations, and/or new video thumbnails." Objections at 5 (quoting SAC ¶¶ 30, 32, 35). These allegations, even if true, are not enough to show that Fenix materially contributed to the unlawfulness of Romelus's content. Recall that, under the "material contribution test," a service provider will remain protected by Section 230 unless "it is 'responsible for what makes the displayed content allegedly unlawful.'" *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1322 (M.D. Fla. 2015) (Covington, J.) (quoting *Jones*, 755 F.3d at 410). A provider

doesn't make a "material contribution" if "it does 'nothing to enhance' the unlawfulness of the message." *L.H.*, 604 F. Supp. 3d at 1364 (quoting *Roommates.com*, 521 F.3d at 1172); *see also Force*, 934 F.3d at 68 ("[The] 'material contribution' test . . . draws the line at the crucial distinction between, on the one hand, taking actions to display actionable content and, on the other hand, responsibility for what makes the displayed content itself illegal or actionable." (cleaned up)).

Neither verifying Romelus's account nor "advertis[ing] and promot[ing]" Romelus's videos meets the material-contribution standard. The Plaintiff insists that verifying Romelus's account "aid[ed] in the sales and subscriptions to access Romelus'[s] content[.]" Objections at 5. But, as Magistrate Judge Strauss noted, "the fact Fenix verified Romelus'[s] identity has no bearing on whether Fenix contributed to the unlawfulness of the content at issue," R&R at 12, and the Plaintiff hasn't provided any authority showing (for instance) that "verifying" an online user's account constitutes an endorsement of the content *that* user creates, *cf., e.g., Jones*, 755 F.3d at 415 ("The district court also suggested that when an interactive computer service provider adds commentary to third-party content that 'ratifies or adopts' that content, then the provider becomes a creator or developer of that content and is not entitled to the CDA's protection. An adoption or ratification theory, however, is not only inconsistent with the material contribution standard of development but also abuses the concept of responsibility." (cleaned up)); *Ripple Labs Inc. v. YouTube LLC*, 2020 WL 6822891, at *6 (N.D. Cal. Nov. 20, 2020) ("The plaintiffs nonetheless contend that YouTube materially contributed to the scam (and created content) by awarding a 'verification badge' . . . thereby 'communicating to hundreds of thousands of viewers and subscribers that these hacked accounts and channels were 'the official channel of a creator, artist, company, or public figure.' . . . The badge did not materially contribute to

the content's illegality here. What made the content illegal was that the scammers hijacked users' content and tricked them into sending their [cryptocurrency] to a digital wallet.").[7]

That Fenix arguably "advertised and promoted Romelus'[s] profile and videos" by "creating webpage posts and adding new captions, video and content summaries, new animations, and/or new video thumbnails," Objections at 5 (quoting SAC ¶ 35), likewise doesn't qualify as material contribution. As we've explained, a service provider doesn't contribute to the illegality of a user's content when it "provid[es] neutral tools" to *all* of its users. *Calise*, 103 F.4th at 745. It would be one thing, for instance, if Fenix singled out Romelus's account and specially made "captions, video and content summaries, new animations, and/or new video thumbnails" for him, but the SAC clearly alleges that Fenix provided the same services to *all* "of its content creators, including [Romelus]." SAC ¶ 35; *see also* R&R at 11 ("Rather, Plaintiff has simply alleged that Fenix creates summaries, animations, and/or thumbnails to link viewers to content creators' profiles, irrespective of what content those profiles contain (i.e., that Fenix acts in a content-neutral manner)."). The law is clear that a service provider doesn't shed Section 230 immunity when it neutrally promotes *all* its users' content in the same way (as Fenix allegedly did here). *See Rigsby*, 59 F.4th at 1008 ("[A] website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online." (cleaned up)); *Force*, 934 F.3d at 70 ("But making information more available is, again, an essential part of traditional publishing; it does not amount to 'developing' that information within the meaning of Section 230. Similarly, plaintiffs assert that Facebook's algorithms suggest third-party content to users 'based on what Facebook believes will

---

[7] In *Hiam v. HomeAway.com, Inc.*, 267 F. Supp. 3d 338 (D. Mass. 2017), a judge in the District of Massachusetts concluded that Section 230 *might* not apply to a provider that "under[takes] some measure of verification *for each posting*." *Id.* at 346 (emphasis added), *aff'd on other grounds*, 887 F.3d 542 (1st Cir. 2018). But *Hiam* differs materially from our case because our Plaintiff alleges that OnlyFans only verified Romelus's *account*—not the individual videos he posted to that account. *See* SAC ¶ 32 ("Additionally, [Fenix] placed a check mark next to content creators' names and profiles to represent that those content creators' identities have been verified by [Fenix].").

cause the user to use Facebook as much as possible' and that Facebook intends to 'influence' consumers' responses to that content. This does not describe anything more than Facebook vigorously fulfilling its role as a publisher."); *L.H.*, 604 F. Supp. 3d at 1364 ("To begin with, a website does not 'create' or 'develop' content simply by providing tools that make user-created content available and usable to others."); *In re Social Media Adolescent Addiction/Pers. Injury Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 828 (N.D. Cal. 2023) (explaining that "provid[ing] 'neutral tools' for the creation or dissemination of content . . . does not destroy Section 230 immunity" (quoting *Roommates.com*, 521 F.3d at 1172))).[8]

*Fourth*, Fenix didn't contribute to the illegality of Romelus's content when it "anonymized web traffic and used a paywall." R&R at 13. Magistrate Judge Strauss found these allegations "vague"—mainly because he couldn't figure out, from the face of the SAC, how anonymizing web traffic or using a paywall would "encourage[] the posting of illegal content or otherwise materially contribute[] to the unlawfulness of the content posted by Romelus." *Id.* at 13–14. In her Objections, the Plaintiff says that paywalls and anonymizing web traffic "protect[] the identities of those who purchase videos depicting rape and sex trafficking" and helps increase the video's sales "because purchasers feel safe, comfortable, and protected from the inquiry of any law enforcement agency investigating those transactions." Objections at 6–7. But these *post hoc* allegations aren't in the SAC, *see* SAC ¶ 29 ("[Fenix] violated 18 U.S.C. § 1595(a) by knowingly benefitting from profit- sharing in a commercial venture by anonymizing web traffic and utilizing a paywall to make it easier for individuals to sell illegal

---

[8] This logic also undermines the Plaintiff's argument that Fenix materially contributed to Romelus's illicit content by "knowingly receiving [a] financial benefit from selling a video depicting Plaintiff's rape[.]" Objections at 5. "[R]evenue-sharing—so long as the methods by which revenue sharing is conducted are neutral with respect to the content—is again an insufficient basis for liability here." *Doe v. WebGroup Czech Rep., a.s.*, 2024 WL 3533426, at *7 (C.D. Cal. July 24, 2024); *see also In re Social Media Adolescent Addiction*, 702 F. Supp. 3d at 834 ("Nothing in Section 230 or existing case law indicates that Section 230 only applies to publishing where a defendants' only intent is to convey or curate information. To hold otherwise would essentially be to hold that any website that generates revenue by maintaining the interest of users and publishes content with the intent of meeting this goal, would no longer be entitled to Section 230 immunity.").

pornographic material."), so Magistrate Judge Strauss properly considered (and discarded) the Plaintiff's wholly conclusory allegation that anonymized web traffic and paywalls helped Romelus sell his illicit video, *see McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) ("Conclusory allegations are not entitled to the assumption of truth."). In any event, designing a website that allows (and even encourages) anonymity doesn't constitute material contribution. *See Est. of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1181–82 (9th Cir. 2024) (applying Section 230 immunity where the plaintiff attempted "to hold YOLO liable as a publisher of third-party content, based in part on the design feature of anonymity"); *L.H.*, 604 F. Supp. 3d at 1364 ("[The plaintiff] points to features like craigslist's embedded messaging system (which allows for confidential communications between buyers and sellers, along with the exchange of sexually explicit photographs) and its policy of accepting pre-paid credit cards for fees and burner phones for contact, which both help users maintain their anonymity. According to L.H., these features demonstrate that craigslist materially contributed to the advertisements L.H.'s traffickers posted of her on the platform. The Court is not convinced.").

The Plaintiff also (incorrectly) argues that Magistrate Judge Strauss "overlook[ed] the allegation that Fenix encouraged the posting of the video by not requiring Romelus to upload a third-party release when the video was uploaded or any time thereafter." Objections at 6. This is patently false; Magistrate Judge Strauss specifically analyzed this argument. *See* R&R at 14 ("Fifth, Plaintiff relies on her allegation that Fenix failed to enforce its policy requiring the submission of signed releases for third parties appearing in videos." (citing SAC ¶ 21)). And the Plaintiff's view that Fenix should be liable for Romelus's content merely because Fenix's rules are ineffective or inconsistently enforced has been repeatedly rejected. *See Est. of Bride*, 112 F.4th at 1182 ("Section 230 prohibits holding companies responsible for moderating or failing to moderate content."); *Force*, 934 F.3d at 71 ("[P]laintiffs also argue that Facebook should not be afforded Section 230 immunity because Facebook has chosen to undertake efforts to eliminate objectionable and dangerous content but has

not been effective or consistent in those efforts. However, again, one of the purposes of Section 230 was to ensure that interactive computer services should not incur liability as developers or creators of third-party content merely because they undertake such efforts—even if they are not completely effective."); *L.H.*, 604 F. Supp. 3d at 1365 ("While some of [the plaintiff's] allegations demonstrate craigslist's appalling lack of diligence in preventing trafficking, not a single one establishes that craigslist created or developed the trafficking content. . . . Put differently, L.H. appears to conflate, on the one hand, craigslist's creation of a platform that her traffickers *used* to traffic her, with, on the other, craigslist's having actually materially contributed, itself, to the creation and development of the illegal postings at issue. . . . While L.H. was certainly trafficked under craigslist's watch, that alone is insufficient to remove § 230's shield of liability." (cleaned up)).

*Fifth*, Magistrate Judge Strauss both properly relied on the Eleventh Circuit's decision in *McCall* and appropriately distinguished the Northern District of Alabama's decision in *MG Freesites*. In *McCall*, the Eleventh Circuit held that Amazon retained its Section 230 immunity—even though it allowed a user to publish an "allegedly defamatory review" and then "fail[ed] to take down [the] review"— because the plaintiff never alleged that "Amazon helped develop the allegedly defamatory review[.]" *Id.* at *3. Magistrate Judge Strauss relied on *McCall* (among other cases) in rejecting the Plaintiff's argument that Fenix should be liable merely because it "failed to enact or enforce safeguards to remove trafficked material from its website." R&R at 13. In the Plaintiff's view, this was a mistake because, unlike Amazon, Fenix "reviewed and published the video without obtaining a third-party release form from Plaintiff" and "acted as an active gatekeeper, prior to the publishing of any content." Objections at 8 (citing SAC ¶ 21). Two problems with this. *One*, the SAC doesn't allege that Fenix *reviewed* Romelus's video before allowing it to be published on OnlyFans, *see generally* SAC; *see also* R&R at 23 n.11 ("Notably, while Plaintiff contends in her response that Fenix affirmatively claims to monitor every video uploaded to OnlyFans, Plaintiff did not include any such allegation in the SAC."), and the

16

Plaintiff "cannot amend her complaint through her Objections to the R&R," *Baptiste v. Bourland*, 2022 WL 669307, at *1 (S.D. Fla. Mar. 7, 2022) (Martinez, J.). *Two*, as we've discussed, "failing to moderate content" isn't a valid basis for discarding Section 230 immunity. *Est. of Bride*, 114 F.4th at 1182. In short, Magistrate Judge Strauss accurately cited and applied *McCall* for the proposition that "[l]awsuits seeking to hold a service provider . . . liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred." 2023 WL 3946827, at *3 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).

Likewise, Magistrate Judge Strauss was right to distinguish *MG Freesites* from our case. The Plaintiff insists that the SAC "contains analogous allegations" to the facts at issue in *MG Freesites*. Objections at 8. This is absurd. As the Eleventh Circuit explained in summarizing the facts of that case, "the plaintiffs [in *MG Freesites*] alleged that the defendants 'actively control which videos are posted,' 'review every video,' 'retitle videos indicating child pornography but leave the videos available for distribution,' and 'create and suggest tags indicating child pornography for uploaders to use.'" *M.H. on behalf of C.H. v. Omegle.com LLC*, 122 F.4th 1266, 1272 (11th Cir. 2024) (cleaned up) (quoting *MG Freesites*, 676 F. Supp. 3d at 1168). Unlike our case, the defendant in *MG Freesites* allegedly accessed, reviewed, and approved every video on its website containing child pornography and actively helped child pornographers hide their content from law enforcement. *See* 676 F. Supp. 3d at 1168–69 ("Allowing banned terms to remain searchable in loosely concealed forms especially demonstrates Defendants' knowledge of their receipt of [child pornography] on their sites and acts as instruction to users to avoid blatant terms that would tip off law enforcement. . . . These practices require accessing and viewing videos and thus provide knowledge of the video content and knowing receipt of the videos."). We thus agree with Magistrate Judge Strauss's assessment that *MG Freesites* "involved much more specific allegations of the defendants materially contributing to the illegal content themselves." R&R at 15 n.7.

Although the Plaintiff has tried to attack Magistrate Judge Strauss's findings from every conceivable angle, her SAC doesn't come close to alleging that Fenix is an "information content provider" under 47 U.S.C. § 230(f)(3). The Plaintiff has, at best, shown that Fenix runs a loosely regulated platform where deplorable material can be posted with little oversight. We therefore agree with Magistrate Judge Strauss that, even when "viewed in their best light, [the] Plaintiff's well-pled allegations allow us to infer no more than the mere possibility that Fenix was responsible for the creation or development of the allegedly illegal content at issue." *Id.* at 15 (cleaned up). We thus **OVERRULE** the Plaintiff's first and second objections.

### C.  The FOSTA Exception Doesn't Apply Here

In her third objection, the Plaintiff contends that Magistrate Judge Strauss wrongly concluded that the FOSTA "exception to CDA immunity does not apply to Fenix in this case." Objections at 9. The Magistrate Judge reached this conclusion in two parts. He first found that the FOSTA exception only applies where the defendant has *actual* knowledge—as opposed to *constructive* knowledge—of an underlying sex-trafficking offense. *See* R&R at 17 ("Thus, as discussed herein, for the FOSTA exception to immunity to apply, Plaintiff would need to demonstrate that Defendant had the actual knowledge required by § 1591."). Then, reviewing the SAC, the Magistrate Judge concluded that the Plaintiff *might* have alleged "Fenix perhaps *should have known* that Romelus engages in lewd, tasteless, creepy, and potentially misogynistic behavior." *Id.* at 22 (emphasis added). But (the Magistrate Judge continued) the Plaintiff had not "show[n] that Fenix knowingly and actively participated in Romelus' alleged sex trafficking activities." *Ibid.* The Plaintiff objects to both parts of this analysis (*viz.*, that the FOSTA exception requires a showing of "actual knowledge" and that the SAC failed to plead actual knowledge). *See* Objections at 9–10.

Unfortunately for the Plaintiff, a few weeks after she filed her objections, the Eleventh Circuit issued its opinion in *M.H.* In that case, the court held (among other things) "that the FOSTA

exception to section 230 requires proof of actual knowledge" and that the statute's "imposition of an actual knowledge standard" deliberately "places a higher burden on sex trafficking victims seeking civil relief against interactive computer services than those seeking relief against other kinds of defendants." *Id.* at 1275. Confronted with this newly binding precedent (which partially vindicated Magistrate Judge Strauss's R&R), we ordered both parties "to file supplemental briefs . . . expressing their view of how the Eleventh Circuit's opinion in *M.H.* affects the pending Motion to Dismiss, the Report and Recommendation, and the Plaintiff's Motion to Amend." Dec. 10, 2024, Paperless Order [ECF No. 80]. The Plaintiff now agrees that, given *M.H.*, "her argument about constructive knowledge is [ ] moot"—though she continues to object to Judge Strauss's "application of the actual-knowledge standard to the facts alleged[.]" Plaintiff's Supplemental Brief [ECF No. 81] at 3. We'll therefore disregard the Plaintiff's third objection insofar as it argues that constructive knowledge is sufficient under the FOSTA exception (since that argument is now foreclosed by *M.H.*) and focus only on whether the SAC sufficiently pleads actual knowledge.

Under the FOSTA exception, Section 230 immunity doesn't apply if "the defendant benefited from participating in a venture that it knew was engaging in sex trafficking." *M.H.*, 122 F.4th at 1274 (citing 18 U.S.C. § 1591). This requires the plaintiff to "allege facts sufficient to conclude that . . . [the defendant] was 'knowingly' assisting, supporting, or facilitating sex trafficking—i.e., using force, threats of force, fraud, or coercion to cause a child or adult to engage in a commercial sex act." *Id.* at 1276. Just because a defendant "should have known" that the perpetrators "would use its website to victimize [the plaintiff]" is insufficient to demonstrate actual knowledge. *Ibid.* With this standard in mind, Magistrate Judge Strauss found that the SAC "does not show that Fenix knowingly and actively participated in Romelus' alleged sex trafficking activities." R&R at 22. The Plaintiff insists that Fenix must have had actual knowledge of the trafficking because Romelus "linked social media accounts in his OnlyFans.com profile which focused on sexual exploitation of 'drunk girls,' 'stupid college

students,' [and] 'freaky girls,'" and then uploaded a video of himself and Charles "slapping Plaintiff and prohibiting her from leaving after she struggles to push them off of her and asks them to stop raping and sodomizing her." Objections at 10 (quoting SAC ¶¶ 13–15, 33–34).

But, as we've suggested, Fenix's nonchalance about the content that's posted on OnlyFans doesn't establish "actual knowledge." *See Does 1–6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) ("[The plaintiffs] allege that Reddit provides a platform where it is easy to share child pornography, highlights subreddits that feature child pornography to sell advertising on those pages, allows users who share child pornography to serve as subreddit moderators, and fails to remove child pornography even when users report it, as the plaintiffs did in this case. Together, they say, this amounts to knowing participation in a sex trafficking venture. Taken as true, these allegations suggest only that Reddit turned a blind eye to the unlawful content posted on its platform, not that it actively participated in sex trafficking." (cleaned up)); *Doe v. Twitter, Inc.*, 2023 WL 8568911, at *7 (N.D. Cal. Dec. 11, 2023) (declining to apply the FOSTA exception where the plaintiff alleged that "the photos [posted on Twitter] were the product of child sex trafficking and [Twitter] affirmatively refused to remove them"); *Doe v. Grindr Inc.*, 709 F. Supp. 3d 1047, 1057 (C.D. Cal. 2023) ("That Grindr may have had constructive knowledge of lawsuits or media accounts concerning sexual predators using the Grindr App in their predations, or that it derived revenue from all users through the sale of ads, does not establish that Grindr violated § 1591 by directly sex trafficking." (cleaned up)). And speculation that "Fenix saw the content of the video yet decided to continue to benefit from sales of the video despite knowing what was on the video" plainly isn't enough, either. R&R at 22–23 (citing *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs.*, 623 F.3d 1371, 1381 (11th Cir. 2010)).

Since the SAC fails to allege that Fenix had "actual knowledge" of Romelus's criminal conduct, Magistrate Judge Strauss correctly found that the FOSTA exception doesn't apply here. The Plaintiff's third objection is therefore **OVERRULED**.

*   *   *

After careful review, then, we agree with Magistrate Judge Strauss's recommendation. Because Fenix neither materially contributed to the illegality of Romelus's video nor had actual knowledge that Romelus and Charles were engaged in sex trafficking, Fenix is entitled to immunity under Section 230. We thus **OVERRULE** the Plaintiff's Objections, **ADOPT** the R&R in full, and **GRANT** Fenix's Motion to Dismiss.

## II.     The Plaintiff's Motion to Amend

Perhaps anticipating that we would agree with Magistrate Judge Strauss, the Plaintiff has moved to file a Third Amended Complaint [ECF No. 75-1] ("TAC"). *See* Motion to Amend [ECF No. 75]. The Plaintiff wants us to allow her to amend because "there are a number of additional good-faith allegations that can be added to cure the deficiencies outlined [in the R&R]." *Id.* at 1. The proposed TAC adds three pertinent allegations: (1) that Fenix "provides content creators with a release form policy that instructs content creators to provide a copy of a photo ID and release document for themselves, and also any other individuals appearing in the content, before the content will be posted"; (2) that "Fenix requires content creators to submit each and every video to Fenix for review, so it can verify compliance with its third-party release form policy, prior to the publishing of the video on the OnlyFans site"; and (3) that "Fenix actively reviewed Romelus' video of Plaintiff's rape, yet still allowed it to be published, and promoted, on OnlyFans and sold to the general public as a party [sic] of an OnlyFans monthly subscription package." *Id.* at 4; *accord* TAC ¶¶ 11–12, 20.

Fenix objects to this amendment on two grounds: *first*, that the Plaintiff "fail[ed] to show good cause to amend under Rule 16," Motion to Amend Response [ECF No. 78] at 6; and *second*, that the proposed amendment "also fails under Rule 15" because (a) the Plaintiff's Motion to Amend was "unduly delayed," (b) Fenix would be greatly prejudiced, and (c) the proposed "amendment would be futile," *id.* at 8–9 (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)).

Federal Rule of Civil Procedure 15 "stresses that courts should freely give leave to amend 'when justice so requires.'" *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)).[9] But there are important limitations on the right to amend. *First*, a district court "need not . . . allow an amendment [under Rule 15] (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant*, 252 F.3d at 1163 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). *Second*, where (as here) a "motion to amend [is] filed after the scheduling order's deadline," the plaintiff "must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).[10] "To establish good cause, the party seeking the extension must have been diligent." *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1319 (11th Cir. 2008). "A lack of diligence is shown by a party's failure to either assert a claim or timely amend when 'the information supporting the proposed amendment to the pleading was available to the movant even before a suit was filed.'" *Eagle R&R LLC v. Specialty Diving of La.*, 2021 WL 6052923, at *2 (S.D. Ala. Sept. 23, 2021) (DuBose, C.J.) (quoting *Sosa*, 133 F.3d at 1419).

Our Plaintiff cannot show good cause to amend her complaint under Rule 16(b). As an initial matter, the Eleventh Circuit has held that "a party [cannot] await a ruling on a motion to dismiss before filing a motion for leave to amend." *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) (citing *Wagner*, 314 F.3d at 542). And our Court has applied the principle of *Avena* to

---

[9] Unlike a *pro se* plaintiff, a plaintiff who is represented by counsel must "file[ ] a motion to amend [or] request[ ] leave to amend before the district court" to avail herself of Rule 15. *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc).

[10] Our Scheduling Order set the deadline to "file all motions to amend pleadings or to join parties" for September 4, 2024. *See* Scheduling Order [ECF No. 62] at 2. But our Plaintiff didn't file her Motion to Amend until November 15, 2024—more than two months after the deadline had expired.

a plaintiff's request to amend the complaint after the magistrate judge issued an unfavorable report

and recommendation. *See Taveras v. Fla. Dep't of Transp.*, 2024 WL 3384995, at *3 (S.D. Fla. July 12,

2024) (Scola, J.) ("Furthermore, even if Taveras's objections [to the report and recommendation] could

be construed as affirmatively seeking amendment, the request is wholly improper.").[11] In short, the

good-cause standard "is not met simply because [the plaintiff was] awaiting the Court's ruling on the

motions to dismiss." *Douglas v. Yacht Op Co. Ltd.*, 2022 WL 2753101, at *2 (S.D. Fla. July 14, 2022)

(Bloom, J.).[12]

    The Plaintiff also fails to show that she was diligent. Indeed, her Motion to Amend tells us

nothing about why she was incapable of advancing her new allegations in one of her *three prior*

---

[11] The Plaintiff admits that she filed her Motion to Amend *in direct response* to Magistrate Judge Strauss's unfavorable R&R. *See* Motion to Amend at 1 ("Upon review of the Report and Recommendations, Plaintiff has determined that there are a number of additional good-faith allegations that can be added to cure the deficiencies outlined therein.").

[12]     In *Emess Capital, LLC v. Rothstein*, 2012 WL 13001838 (S.D. Fla. May 2, 2012), Judge Lenard found that the plaintiff had shown good cause to amend its complaint even after a "Magistrate Judge's Report notified Emess that Counts I and II of its Complaint contained deficiencies[.]" *Id.* at *6. For two reasons, we don't think *Emess Capital* is relevant here. *One*, the magistrate judge in that case explicitly "indicated that the Court likely would permit Emess to amend its complaint to cure those deficiencies." *Ibid.* Magistrate Judge Strauss gave no such indication and, in fact, rejected the Plaintiff's improper request for leave to amend. *See* R&R at 23 n.12 ("In her response, Plaintiff requests leave to amend her SAC 'if this Court determines that Count I is deficiently pled in any way.' However, 'where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.'" (quoting *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1236 (11th Cir. 2022))).

    *Two*, unlike our case, discovery had already begun in *Emess Capital*, so the plaintiff was trying to allege new facts that "could not have been discovered in the exercise of reasonable diligence before the Court's September 1, 2011 amendment of pleadings deadline." 2012 WL 13001838, at *6. Other judges in this District have similarly distinguished their cases from *Emess Capital* for these same reasons. *See, e.g.*, *Douglas*, 2022 WL 2753101, at *2 ("[I]n [*Emess*], the plaintiff also had discovered substantial additional facts, and while the Court found that awaiting a ruling was justified, the motion at issue had been referred to the magistrate for a report and recommendations, in which the magistrate recommended that leave to amend be granted. Such is not the case here."); *Nat'l Tr. Ins. Co. v. Savoy Hotel Partners, LLC*, 2024 WL 1908955, at *2 (S.D. Fla. Apr. 30, 2024) (Scola, J.) ("For example, in [*Emess Capital*], the Court found good cause, in part, where a magistrate judge had advised . . . that the plaintiff should be permitted to file an amended complaint if it can cure the pleading deficiencies identified in the foregoing analysis. Savoy was given no similar leeway or signal here that it could await a ruling on the motion to dismiss before moving to amend." (cleaned up)).

*complaints. Cf. Kernal Records Oy v. Mosley*, 794 F. Supp. 2d 1355, 1369 (S.D. Fla. 2011) (Torres, Mag. J.) ("Diligence is evaluated by considering the following factors: (1) whether the plaintiff failed to ascertain facts prior to filing the complaint and to acquire information during the discovery period; (2) whether the information supporting the proposed amendment was available to the plaintiff; and (3) whether even after acquiring the information the plaintiff delayed in seeking the amendment."). Although the Plaintiff tries to justify her delay by arguing that she "has not failed to acquire information during the discovery period because the discovery cutoff has not passed and the parties have not conducted discovery," Motion to Amend Reply at 3, the lack of discovery cuts *against* her because it suggests that the Plaintiff *previously knew* (or should have known) all about the new allegations she's advancing in the TAC but simply failed to include them in her earlier complaints, *see Mosley*, 794 F. Supp. 2d at 1370 ("[W]e find that Plaintiff has not identified any facts or new information it could not otherwise have discovered that justify an amendment of the complaint at this late stage in the proceedings."); *Eagle R&R*, 2021 WL 6052923, at *2 ("A lack of diligence is shown by a party's failure to either assert a claim or timely amend when the information supporting the proposed amendment to the pleading was available to the movant even before a suit was filed. If a party was not diligent, the good cause inquiry should end. And case law makes clear that simple oversight or inadvertence by counsel—as a matter of law—is insufficient to constitute 'good cause.'" (cleaned up)); *see also* Response to Motion to Amend at 7 n.3 ("These are not newly discovered facts justifying Plaintiff's delay in seeking to assert them. Given the allegations in the SAC, it is clear that Plaintiff was [already] well aware of this alleged policy.").

The Plaintiff, in short, has failed to show "good cause" to amend her pleadings under Rule 16(b). And, since she's failed to satisfy the strictures of Rule 16(b), her Motion to Amend is **DENIED**.

24

### III.     The Remaining Claims Must be Remanded

With Count I of the SAC now dismissed, the Plaintiff's only remaining claims are run-of-the-mill state-law torts against Defendants Romelus and Charles. *See generally* SAC 8–11 (alleging four counts of battery and intentional infliction of emotional distress). Federal courts "must zealously [ensure] that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). There's no dispute that we lack (and have always lacked) diversity jurisdiction under 28 U.S.C. § 1332(a), since the Plaintiff and Defendants Romelus and Charles are all citizens of Florida. *See* SAC ¶¶ 3–5; *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) ("In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action."). Before today's decision, we *had* federal-question jurisdiction because Count I of the SAC alleged that Fenix violated 18 U.S.C. §§ 1591 and 1595—two federal statutes. *See* SAC at 5. And, because we had federal-question jurisdiction, we could exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over the Plaintiff's "state claims [which] arose out of a common nucleus of operative fact with the federal claim[.]" *Silas v. Sheriff of Broward Cnty., Fla.*, 55 F.4th 863, 865 (11th Cir. 2022).

But, with the Plaintiff's sole federal claim now gone, we no longer have supplemental jurisdiction over the Plaintiff's related state-law claims. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well."); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 2025 WL 96212, at *11 (U.S. Jan. 15, 2025) ("And once [the federal claim] was gone, the court's supplemental jurisdiction over the state claims dissolved too."). Since this case was removed from state court, *see* Notice of Removal [ECF No. 1], we'll remand the remaining state-law claims back to

state court, *see Wullschleger*, 2025 WL 96212, at *9 ("The operative pleading no longer supports federal jurisdiction, and the federal court must remand the case to the state court where it started."); *Silas*, 55 F.4th at 866 ("[R]emand [reflects] our preference for the state-court adjudication of state-law issues.").

CONCLUSION

Having conducted a careful, *de novo* review of the R&R, the record, the pleadings, and the applicable law, we hereby **ORDER AND ADJUDGE** as follows:

1. Magistrate Judge Strauss's R&R [ECF No. 73] is **ACCEPTED and ADOPTED** in full. The Plaintiff's Objections [ECF No. 74] are **OVERRULED**.

2. Fenix's Motion to Dismiss [ECF No. 65] is **GRANTED**. Count I of the Plaintiff's Second Amended Complaint [ECF No. 63] is **DISMISSED with prejudice**.

3. The Plaintiff's Motion to Amend [ECF No. 75] is **DENIED**.

4. The rest of the Plaintiff's Second Amended Complaint (Counts II–V) is **REMANDED** back to the Seventeenth Judicial Circuit Court in and for Broward County, Florida.

5. All deadlines and hearings are **TERMINATED**, and any other pending motions are **DENIED as moot**. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on January 29, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record